Edwin Franklin SIMMS, Petitioner,

v.

The VALLEY LINE COMPANY, The Home Insurance Company and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 82–4220

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 14, 1983.

---

J. Paul Demarest, New Orleans, La., for petitioner.

Michael McGlone, New Orleans, La., for Valley Line Co.

Marianne Demetral Smith, U.S. Dept. of Labor, Washington, D.C., for Dir., Office of Workers Compensation Programs.

Donald Bann, Michael A. Lombard, B. Ralph Bailey, Metairie, La., for Home Ins. Co.

Before GEE, RANDALL and TATE, Circuit Judges.

TATE, Circuit Judge:

Edwin Simms, an injured maritime worker, appeals from a Benefits Review Board order dismissing him as a party (because not adversely affected by the decision below) from an administrative appeal in which he, his employer, and his employer's workmen's compensation insurer sought review of an administrative law judge's determination that Simms is not a seaman (a fact which if correct, would entitle him to Longshoremen and Harbor Workers' Compensation Act benefits, but might preclude him from the possible larger recovery, he would prefer, in his pending suit under the Jones Act). In the present appeal, Simms contends that the administrative law judge erred in refusing to stay the present compensation proceeding until his Jones Act suit was determined, and that the Board erred in denying him review of the administrative law judge's denial of this stay. Since the key issue in controversy (from the decision of which adverse effects are contended to flow)—whether Simms is a seaman or a harbor worker—remains still to be decided by the Board, we conclude that Simms' appeal is premature, and dismiss.

## I.

One night in June 1980, approximately five weeks after he assumed the duties of a night watchman at the Marrero, Louisiana docking facilities of the Valley Line Company, Simms sustained injuries when he fell into the open hold of a barge (owned, as were allegedly all barges at the facilities, by his employer Valley Line or one of its subsidiaries) while in the course of positioning fleet lights (whereby approaching craft on the river were warned of the exact configuration of the docked fleet).

Uncertain whether his duties tending the barges were of a nature rendering him a seaman/member of the crew—as such term is used to define the eligibility border between, on the one hand, seamen who may seek relief under the Jones Act, 46 U.S.C. § 688 (apart from and in addition to any claim a seaman may have for maintenance and cure), and, on the other hand, harbor workers who are entitled to the compensation benefits provided under the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*—, Simms brought suit as a seaman under the Jones Act *and* also filed for compensation benefits as a harbor worker under the Compensation Act. The present appeal arises from the harbor worker compensation proceedings.

In a hearing before an administrative law judge of the Department of Labor: (a) *Valley Line* (who had paid some six to seven thousand dollars in compensation disability benefits and more than $43,000 in medical expenses and wanted to recover same from its compensation insurer, Home Insurance) sought to prove that Simms was a harbor worker entitled to benefits under the Compensation Act, and not a seaman (against the claims of whom Valley Line was a self-insurer); (b) the *Home Insurance Company* (Valley Line's compensation insurer) sought to prove that Simms was instead a seaman (and therefore beyond the coverage of Valley Line's policy), not a harbor worker; and (c) the claimant *Simms* sought to occupy a middle distance between them, urging that he not be "in any way prejudiced" in seek-

ing relief under both seamen's and harbor workers' remedies. The administrative law judge determined that Simms was not a seaman but a harbor worker, and she therefore awarded benefits against Home Insurance under the Compensation Act, also requiring this insurer to reimburse Valley Line (the employer) for compensation and medical expenses paid by it.

Home Insurance appealed the administrative law judge's determination to the Benefits Review Board. The claimant Simms' petition for review adopted by way of reference the issues presented and arguments as to seaman status of Home Insurance, but he also pointed out the pendency of his Jones' Act suit and requested relief that he be not "in any way be prejudiced" in seeking both compensation benefits and having at the same time filed a Jones Act suit.[1] Upon Valley Line's motion to dismiss the appeal of the claimant, the Board dismissed Simms from the appellate proceedings on the grounds that he was not a party adversely affected by the decision of the administrative law judge, since he had been awarded the benefits for which he had filed under the Compensation Act. Simms then appealed to this court on the basis of 33 U.S.C. 921(c), which permits an appeal to the court of appeals of a "final order" of the Board.[2]

## II.

Relying primarily on our decision in *Boatel Inc. v. Delamore,* 379 F.2d 850 (5th Cir. 1967), as recognizing the legal plight of injured maritime workers employed at the border of harbor/work seaman status (and the practice of such workers to pursue claims on both Jones Act and Compensation Act theories simultaneously), Simms urges that if the administrative finding of harbor worker status is given effect, either as res judicata or on grounds of collateral estop-pel, by the district court trying his Jones Act suit, he will be, in fact if not in form, (a) relegated to what he perceives to be the lesser of the two closely related remedial schemes, (b) deprived of a jury determination (styled a constitutional right) of the seaman status question, and (c) effectively precluded from obtaining at any time by an appellate court a review on the merits of the status determination, if the Board's dismissal for lack of standing to appeal is affirmed.

## III.

Well recognized are the difficulties faced by injured maritime workers arguably both seamen and harbor workers who must choose whether and by what means they will pursue remedies that in substantive theory are perfectly mutually exclusive (the Compensation Act, which for present purposes applies to all *but* seamen, and the Jones Act, which applies *only* to seamen), but which seem in practice to frequently overlap each other's borders:

> Thus, despite our continued insistence that a Jones Act "seaman" and a "crew member" excluded from the Longshoreman's Act are one and the same (in other words that the statutes are mutually exclusive) we recognize that in a practical sense, a "zone of uncertainty" inevitably connects the two Acts.

*McDermott, Inc. v. Boudreaux,* 679 F.2d 452, 459 (5th Cir.1982). The recognition by this circuit that the Jones Act and the Longshoreman's Act each requires a "liberal application in favor of claimant to effect its purposes," *McDermott, supra,* 679 F.2d at 458, has further contributed to the zone of uncertainty and to the dilemma of injured workers within it. They, in reaping the rewards of such liberality, may find, as Simms asserts is true here, that a formal

---

1. Simms' petition for review, liberally construed, adequately preserved his complaint as to the interlocutory denial of the stay.

2. 33 U.S.C. 921(c) provides in pertinent part:
   (c) Any person adversely affected or aggrieved by a *final order* of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside.... (Emphasis added.)

victory as a harbor worker serves as a practical defeat of what is perceived as the greater seaman's remedy, if prevailing under the Compensation Act indeed effectively precludes a subsequent opportunity for relief under the Jones Act. *See* G. Gilmore & C. Black, The Law of Admiralty 434–36 (2d ed. 1975); 4 A. Larson, Workmen's Compensation Law § 90.51 (1983);[3] 1A Benedict on Admiralty § 23 (1982); 1 M. Norris, the Law of Maritime Personal Injuries §§ 8–11 (3d ed. 1975).

While the mere acceptance of Compensation Act benefits without a formal adjudi-

cation of seaman status will not preclude a subsequent Jones Act suit,[4] the extent to which collateral estoppel and res judicata will be applied to a Jones Act suit following a formal Board finding of non-seaman status and an award of benefits appears to be a matter of first impression in this circuit (and one about which the commentators suggest there is uncertainty.)[5] We note that (1) Simms' theory of appealable adverse effects arises out of the unique relationship of the Jones Act and the Longshoremen's and Harbor Workers' Act and (2) his contention that an exception should

**3.** Professor Larson (cited and approved by Professors Gilmore and Black) argues that the particular nature of workmen claims, at law or pursuant to a compensation system, arising out of work-related injury and disability, demands that the worker be freely allowed to obtain a recovery by all lawful means available to him. He contends specifically that a maritime worker's compensation claim should not prejudice his subsequent Jones Act suit, (especially since the danger of a double recovery is routinely avoided by crediting a smaller prior award against a larger later award):

The community has decided that injured workmen and their families shall have as a minimum the security that goes with non-fault compensation. It is not for the individual, once he is part of that system, to elect whether its protection is a good idea for him or not. If he accepts or claims its benefits, this is not an election but merely the setting in motion of a protective process ordained by the state. This being so, it would undermine and prejudice the operation of this protective public program if the claimant were put in the position of risking the loss of other valuable rights, such as those under the Jones Act, by the mere fact of accepting or invoking this basic system of compensation protection. It is of the nature of compensation, as distinguished from damage actions, that it is intended to be both prompt and reliable, in order to perform its function of caring for the immediate economic and medical needs of an injured worker and his family. If, then, he accepts or claims compensation as his first move, perhaps fully intending to follow this with a Jones Act action, this should not be thought to be sinister, deceitful, or avaricious on his part. He is setting out to ensure that he gets the minimal social insurance protection that he may be entitled to. If it turns out later that he is entitled to a more generous award under a different system, since the compensation award will be credited on the larger award, there has been no serious harm done.

Larson, *supra,* § 90.51, at 16–366 to 16–367. *Cf. Boatel, Inc. v. Delamore, supra,* 379 F.2d at 854.

**4.** *See, e.g., Tipton v. Socony Mobile Oil Co.,* 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963) (per curiam); *Boatel, Inc. v. Delamore, supra,* 379 F.2d at 856. *See also Young & Company v. Shea,* 397 F.2d 185 (5th Cir.1968) (no collateral estoppel in Compensation Act proceedings following jury finding of no injury in Jones Act suit); *and cf. McDermott, Inc. v. Boudreaux, supra,* 679 F.2d at 459 (reversing Board finding that claimant not a seaman, but noting at *id.,* n. 7, "even the ambiguous employee must elect a remedy, however").

**5.** *See, e.g.;* Larson, *supra,* § 90.51, at 16–367:

When the compensation process has gone beyond acceptance of benefits and even beyond the filing of a claim to the point at which a formal award has been entered, a far more formidable defense looms, that of res judicata or collateral estoppel.

Most of the cases that have found it unnecessary to apply the bar in longshoremen's cases have reached this result, not by attacking the applicability of res judicata in this context head-on, but by finding that for some reason the facts fall short of full compliance with the exacting requisites of the doctrine.

and Gilmore & Black, *supra,* at 435:

Even the payment of benefits pursuant to a formal award in a contested proceeding is not necessarily fatal to the Jones Act action. The courts have shown themselves receptive to the argument that the compensation award may have been made without a proper adjudication of the claimant's status as harbor worker or seaman. But the plaintiff who attempts to bring a Jones Act action following a compensation award in a contested proceeding may find himself barred in a court which takes res judicata and collateral estoppel seriously.

be made to the general rule that prevailing parties lack standing to appeal *both* depend upon a *final* board determination of non-seaman status (which has not yet been made).[6]

Although the Board may ultimately affirm the administrative law judge's findings that Simms is not a seaman, it has not done so yet. Our review of Board action is restricted to that of a *"final* order" of the Board, 33 U.S.C. § 921(c) (quoted at note 2, *supra* ), a requirement that follows the contours of the finality rule for review of district court judgments embodied in 28 U.S.C. § 1291. *Ingalls Shipbuilding Division v. White,* 681 F.2d 275, 278 (5th Cir. 1982); *Office of Workers' Compensation Programs v. Brodka,* 643 F.2d 159, 161 (3d Cir.1981); *National Steel & Shipbuilding Co. v. Director of Workers' Compensation Programs,* 626 F.2d 106, 107–08 (9th Cir. 1980). Since Home Insurance remains in the appeal before the Board to urge reversal on the issue of Simms' seaman status, and judicial review is affordable to aggrieved parties following entry of a "final order" by the Board, we conclude that as yet no appealable final order has been entered that "terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis Iron Mountain & Southern Railway v. Southern Express Co.,* 108 U.S. 24, 28–29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).[7]

Accordingly, we DISMISS Simms' appeal as premature.

DISMISSED.

**6.** It is also entirely possible that, in either the appeal pending before the Board between Home Insurance and Valley Line or in Simms' Jones Act suit in federal district court, determinations yet to be made may moot, in whole or part, Simms' contentions here. For example, the district court might refuse to give collateral effect to the status determination here made for purposes of the Compensation Act.

**7.** The Board's summary dismissal of Simms from the proceedings before it is essentially analogous to the grant of a motion for Rule 12(b)(6) dismissal for failure to state a claim or for summary judgment to dismiss one party from a multiple party lawsuit, which is regarded as a non-final and non-appealable judgment. *See, e.g., Pettinelli v. Danzig,* 644 F.2d 1160 (5th Cir.1981). Upon final Board order, then (if the administrative law judge is affirmed on the merits or, for that matter, reversed), Simms' appeal as to the alleged erroneous denial of stay will no longer be barred for lacking requisite finality.