United States Court of Appeals,
Fifth Circuit.

No. 91–3690.

Ernest D. SHARP, Plaintiff–Appellant,

Wausau Insurance Company, Intervenor–Appellant,

v.

JOHNSON BROTHERS CORPORATION, St. Paul Fire & Marine Insurance Co., and
Centennial Insurance Company, Defendants–Appellees.

Sept. 25, 1992.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ernest D. Sharp, an employee of Johnson Brothers Corporation ("Johnson Brothers"), was injured while performing bridge repair work and filed suit under the Jones Act, 46 U.S.C.App. § 688, and a claim under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* He eventually reached a settlement with Johnson Brothers and its compensation insurer, the Wausau Insurance Companies (Wausau), under the LHWCA. Pursuant to the LHWCA, an administrative law judge ("ALJ") of the Department of Labor (DOL) entered an order approving the settlement and discharging Johnson Brothers and Wausau upon its payment. The district court then dismissed Sharp's Jones Act claim, holding that the election of his LHWCA remedy precluded Jones Act relief. We affirm.

I.

Sharp was a welder/pile driver for Johnson Brothers, helping to replace a railroad drawbridge over Lake Pontchartrain. He worked abroad a fleet of barges that Johnson Brothers had chartered. In November 1985, a crane dropped a load of iron on him while he worked on a tugboat in the lake, injuring his back, knee, and ankle. Johnson Brothers had obtained protection and indemnity insurance for the tug from St. Paul Fire & Marine Insurance Co. ("St. Paul"), which provided excess coverage

on the barges, which also were insured by Centennial Insurance Company ("Centennial").

Johnson Brothers initiated compensation proceedings, filing a notice with the DOL, which issued a letter informing Johnson Brothers that Sharp's injury fell "within the purview" of the LHWCA and that Johnson Brothers had filed a tardy accident report. The DOL also notified Sharp that his injury "appear[ed] to fall under the jurisdiction of the [LHWCA]." Johnson Brothers then began to pay Sharp the benefits he would be due under the LHWCA.

Sharp filed a Jones Act suit in November 1986. In 1987 Johnson Brothers terminated his harbor worker benefits, and Sharp filed an LHWCA claim with the DOL. Johnson and Wausau raised the defense that Sharp was a Jones Act seaman and thus not eligible for longshore compensation.

After four continuances and a trial, the district court granted a directed verdict against Sharp on his Jones Act claim in June 1989 on the grounds that the barges were not vessels and that he was not a seaman. Sharp filed a timely notice of appeal in October 1989.

In September 1989, though, Sharp, Johnson Brothers, and Wausau settled Sharp's LHWCA claim, agreeing that Sharp would receive $225,000 and in return would release Wausau completely and would release Johnson Brothers to the extent that it was uninsured by Centennial and St. Paul. A final release was executed on October 5, 1989, and an ALJ approved the settlement pursuant to the LHWCA, 33 U.S.C. § 908(i)(1). St. Paul and Centennial assert that they knew nothing of the settlement at that time.

This court heard oral argument on the appeal of the district court's directed verdict in August 1990, and, inexplicably, no one representing Sharp, Wausau, or Johnson Brothers mentioned the settlement. In November 1990, we reversed the district court on the ground that a fact question existed as to whether Sharp worked aboard a fleet of vessels and thus was a seaman. *Sharp v.*

*Johnson Bros. Corp.,* 917 F.2d 885 (5th Cir.1990).

In August 1991, the district court granted summary judgment against Sharp, holding that, since as a consequence of the settlement he had elected his remedy as a harbor worker, he had no right of direct action against either of the indemnity insurers, St. Paul or Centennial, and that Johnson Brothers had violated its duty of cooperation with its insurers.[1]

## II.

### A.

The district court ruled that the settlement the DOL approved constituted an election of remedies and precluded the filing of a suit based upon general maritime law or the Jones Act. It based its decision upon *Vilanova v. United States,* 851 F.2d 1, 4 (1st Cir.1988) (Wisdom, J., sitting by designation), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 811, 102 L.Ed.2d 801 (1989), which states that Congress did not intend to give injured workers two chances to maximize their compensation award. The district court reasoned that the entry of an order by the ALJ constituted a finding that the injuries were compensable under the LHWCA and that by seeking, and acquiescing to, the finding, Sharp is collaterally estopped from contesting LHWCA coverage.

### B.

Sharp argues that the district court misunderstood what occurred. He argues that because there is a "zone of uncertainty" between the Jones Act and the LHWCA, an injured worker may pursue both remedies simultaneously. *See Simms v. Valley Line Co.,* 709 F.2d 409, 412 (5th Cir.1983). He also points to a number of commentators who argue that a worker should be able to accept benefits without losing his Jones Act claim, since the purpose of the compensation and recovery schemes is to protect the worker during his time of need. *See id.* (citing treatises). Further,

---

[1]As we conclude that the court did not err in barring Sharp's Jones Act proceeding, we do not consider the additional bases for the district court's decision.

there is no danger of double recovery, as one recovery is credited against the other.

Sharp further argues that collateral estoppel should not apply, because the issue of whether he was a seaman or a harbor worker was not litigated; only a consent judgment was entered in his case. According to Sharp, a consent judgment does not give rise to estoppel, as the issues underlying the judgment are neither actually litigated nor necessary and essential to the judgment. *See Hughes v. Santa Fe Int'l Corp.,* 847 F.2d 239 (5th Cir.1988) (finding no issue preclusion). According to Sharp, the ALJ reviewed the agreement only for fairness, not jurisdiction.

Sharp calls our attention to *Southwest Marine v. Gizoni,* ——— U.S. ———, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991), issued shortly before he filed his opening brief. In *Gizoni,* a rigging foreman who worked on floating platforms and sometimes did seaman's work was injured. He submitted a claim for, and received, medical and compensation benefits from Southwest Marine under the LHWCA and then sued under the Jones Act, alleging that he was a seaman injured by his employer's negligence. The district court granted summary judgment because he was not a seaman and because he was a harbor worker precluded by the exclusive remedy provisions of the LHWCA from bringing his action. The Ninth Circuit reversed, saying Gizoni's status was an issue of fact and that the LHWCA does not cover seamen, so he might be eligible for a Jones Act award. *Gizoni v. Southwest Marine,* 909 F.2d 385 (9th Cir.1990).

The Supreme Court affirmed the court of appeals, reasoning that the two statutory compensation regimes are mutually exclusive and that a maritime worker is limited to LHWCA remedies only if no genuine fact issue exists as to whether he is a Jones Act seaman. ——— U.S. ———, 112 S.Ct. at 492. The Court also stated that it found no indication in the LHWCA that Congress intended to preclude or stay traditional Jones Act suits in the district courts. *Id.* at ———, 112 S.Ct. at 493.

Most relevantly for the instant appeal, the Court stated that it is "universally accepted" that an employee who receives voluntary payments under the LHWCA without a formal award is not barred from subsequently seeking relief under the Jones Act, because "quite obviously" the question of coverage has never actually been litigated. *Id.* at ——, 112 S.Ct. at 493–94. The Court observed that because the LHWCA provides that any amounts paid under the Jones Act shall be credited against any liability imposed under the LHWCA, the LHWCA does not comprehend a preclusive effect. Finally, the court rejected an estoppel argument, since there is no threat of double recovery, stating that the estoppel argument "would force injured maritime workers to an election of remedies we do not believe Congress to have intended." *Id.* at —— n. 5, 112 S.Ct. at 494 n. 5.

## C.

Johnson Brothers, St. Paul, and Centennial distinguish *Gizoni* on the basis that the Court states that "voluntary payments under the LHWCA without a formal award" do not bar Jones Act relief but that here the filed settlement agreement of a compensation claim does constitute a "formal award." We agree.

It is beyond cavil that merely accepting voluntary payments under the LHWCA without a formal award does not bar a worker from filing a Jones Act suit. *See id.* at ——, 112 S.Ct. at 493; *see also Boatel, Inc. v. Delamore,* 379 F.2d 850 (5th Cir.1967). Here, though, Sharp obtained a settlement agreement and a compensation order issued by the ALJ. We have treated such an agreement and order as a "formal award." *See Newkirk v. Keys Offshore,* 782 F.2d 499, 501–02 (5th Cir.1986); *see also Rodriguez v. Compass Shipping Co.,* 617 F.2d 955, 958–59 (2d Cir.1980), *aff'd,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981).

Sharp argues that the settlement agreement does not dispose of the issue of coverage. In *Simms,* 709 F.2d at 412, cited in *Gizoni,* we quoted legal scholars who argued that even the payment of benefits pursuant to a formal award in a contested proceeding might not be fatal to a Jones Act

action if the compensation award was made without a proper adjudication of the claimant's status as a harbor worker. *Id.* at 412 n. 5. We never reached that issue, however, as we dismissed the petitioner's appeal as premature.

It is true that LHWCA coverage was never litigated in an adversarial proceeding. But Sharp availed himself of the statutory machinery to bargain for an award, and he had the full opportunity to argue for (or against) coverage. He filed a claim for LHWCA benefits, invoking the jurisdiction of the DOL. Pursuant to 33 U.S.C. § 908(i)(1), the ALJ considered Sharp's testimony, as well as the parties' stipulations and their settlement, before issuing its findings of fact and order extinguishing Johnson Brothers's and Wausau's liability for LHWCA benefits.

Having obtained the order of the ALJ and the aegis of the DOL to ratify and enforce his settlement, Sharp ensured that his rights were more secure under the agreement than they would have been if the settlement were considered merely a contract between the parties.[2] It follows that where the ALJ issues a compensation order ratifying a settlement agreement, a "formal award" should be deemed to have been made under *Gizoni,* and the injured party no longer may bring a Jones Act suit for the same injuries.

Our holding is consistent with the purpose of the LHWCA, as outlined in *Fontenot v. AWI, Inc.,* 923 F.2d 1127 (5th Cir.1991). The LHWCA was not designed to create a mere safety net, guaranteeing workers a minimum award as they seek greater rewards in court. Rather, it has a benefit to employers, too, giving them limited and predictable liability in exchange for their giving up their ability to defend tort actions. *Id.* at 1132 (*quoting Morrison–Knudsen Constr. Co. v. Director, Office of Worker Compensation Programs,* 461 U.S. 624, 636, 103 S.Ct. 2045, 2052, 76 L.Ed.2d 194 (1983)). Permitting a Jones Act proceeding after a formal compensation award here would defeat

---

[2]In notifying the parties of the ALJ's ruling, the Deputy Commissioner of the DOL informed them that if the employer/insurance carrier failed to pay the compensation award within 10 days, it would be liable for an additional 20%.

the purpose of the LHWCA, as well as work unfairness, because, as here, employers often have different insurance carriers for workers' compensation claims and tort claims, so the compensation insurer, by guaranteeing a minimum award, necessarily would reduce the ability of the tort insurer to effect a settlement.

Nor is our holding inconsistent with *Gizoni.* In that case the Court held that an injured maritime worker did not have to choose between pursuing his potential remedies under the LHWCA and the Jones Act. There is a difference, though, between saying a plaintiff may *pursue* only one remedy and declaring that he may *receive* only one award.

We agree that Congress did not intend that a worker forfeit his right to pursue one remedy when he pursues another. Otherwise, a plaintiff might fail to receive a LHWCA award, because the ALJ considered him a seaman, but be barred from Jones Act relief because he pursued what he believed were his remedies under the LHWCA.

Nor should an employer be able to avoid Jones Act liability by voluntarily paying LHWCA benefits that a needy worker cannot but accept while awaiting trial. *See Gizoni,* —— U.S. at ——, 112 S.Ct. at 493; *Tipton v. Socony Mobil Oil Co.,* 375 U.S. 34, 37, 84 S.Ct. 1, 3, 11 L.Ed.2d 4 (1963). But Congress did not intend that the worker be able to pick and choose his remedy based upon which has conferred upon him a larger award. That is, the LHWCA was not intended to be a "stepping stone on the way to a jury award." *Fontenot,* 923 F.2d at 1133.[3]

The judgment of the district court is AFFIRMED.

---

[3]As a final note, we are distressed by the conduct of the attorneys for Sharp, Johnson Brothers, and Wausau during the previous appeal. Although we have no basis upon which to ascertain their motives, we are surprised that the parties failed to bring to our attention the fact that they had settled at least one aspect of their dispute. We recognize that counsel may legitimately have believed that the LHWCA settlement was irrelevant to the Jones Act action. Nevertheless, candor and respect for this court would dictate that the parties inform us of so significant a development in their litigation.