ItMURRAY, Judge.
This appeal raises the issue of the res judicata effect of a settlement of a claim for benefits under the Longshore and Harbor Workers’ Compensation Act. The trial court found that the LHWCA settlement barred plaintiffs claim for vessel negligence arising *569 from the same accident that was the subject of the LHWCA settlement. We reverse and remand for further proceedings.

FACTS

This case presents a procedural morass that is a law professor’s dream and a law student’s nightmare. Ernest Sharp, who was employed by defendant Johnson Bros. Corporation on a railroad drawbridge replacement project, was injured on November 29, 1985, when a load of angle iron was dropped on him from a crane operated by one of his co-employees. Mr. Sharp’s work on the draw bridge project involved a tug boat and a fleet of barges. His accident occurred while he worked on the bow of a tug located on Lake Pontchartrain. He injured his knee and back in the accident.
|2Mr. Sharp filed a maritime complaint in the federal district court for the Eastern District of Louisiana on November 18, 1986, alleging that he was a seaman. He asserted two claims against Johnson Bros.: negligence under 46 U.S.C. § 688, the Jones Act, and unseaworthiness under the general maritime law. The complaint also named Wausau Insurance Company as a defendant, alleging that it insured Johnson Bros, for liability related to vessel ownership and operation. This complaint was amended to add Centennial Insurance Company and St. Paul Fire & Marine Insurance Company as additional insurers of Johnson Bros.
Issue was joined and discovery proceeded in the federal court action. The matter was fixed for trial on four occasions: June 29, 1987; March 21, 1988; August 18, 1988; November 14, 1988. A Minute Entry of October 26, 1988, indicates that the November 14 trial was continued on the Court’s own motion, but noted that “while the plaintiffs portion of this ease is ready to proceed to trial, the various claims being made by and between the defendants are not.”
Following the continuance of the November 14 trial date, Mr. Sharp filed this suit on November 19, 1988, in Orleans Parish Civil District Court, under the Savings to Suitors Clause, 28 U.S.C. § 1333, setting forth the same claims against the same defendants as raised in the federal court action. On December 13, 1988, Mr. Sharp amended his state court suit to add a claim based on the failure to pay maintenance and cure, and an alternative claim for vessel negligence under § 905(b) of the LHWCA in the event it was determined that he was not a seaman. He did not, at that time, seek leave to amend his federal court action to add this alternative claim. Centennial excepted to the state court action on the basis of prescription; the exception, however, was not set for hearing. On January 10, 1989, Centennial filed an exception of lis pendens in the state court action based |3on the pending federal court action. Johnson Bros, and St. Paul filed the same exception on January 12,1989. It does not appear that these exceptions were set for hearing, nor does the record contain any ruling on the exceptions or stay of the state court action. On June 19,1989, Wausau filed a petition of intervention for recovery of payments by it to Mr. Sharp under the LHWCA.
On December 14, 1988, the federal court set the matter for jury trial on June 12,1989. Plaintiffs motion for an expedited trial, which was filed on January 9, 1989, was denied on March 9,1989.
The question of Jones Act seaman status was severed and tried to a jury beginning on June 13, 1989. On June 15, 1989, on the third day of trial in federal court, the court granted the defendants’ motion for directed verdict on the issue of seaman status. A judgment dismissing the plaintiffs claims against Johnson Bros., Wausau, St. Paul Fire & Marine, and Centennial was entered on October 17, 1989. Plaintiff filed a notice of appeal on October 30,1989.
Meanwhile, Mr. Sharp, whose benefits under the LHWCA were terminated in August 1987, and who was receiving no maintenance, sought to have compensation benefits reinstated. A hearing on his claim for benefits under the LHWCA was scheduled, but Mr. Sharp settled all claims against Johnson Bros, immediately prior to this hearing. The lump sum settlement pursuant to § 8(i) of the LHWCA was approved on September 21, 1989. In the settlement agreement Mr. Sharp and Johnson Bros, attempted to pre *570 serve the issue of Jones Act status. A Receipt, Release and Indemnity Agreement was executed by Mr. Sharp and his wife on October 5, 1989. The release set forth the express intention of Mr. and Mrs. Sharp that it not run in favor of any person, firm or corporation not specifically a party to the settlement as well their intention to pursue any claims Uthey might have against any other persons. The release also provided that the Sharps would not sue Wausau in any capacity, and that they would not sue Johnson Bros, except as it was insured by St. Paul and/or Centennial.
The various insurance defendants in the federal action[1] and the U.S. Fifth Circuit Court of Appeal were not advised of Mr. Sharp’s settlement of his LHWCA claim.[2] In November 1990 the United States Court of Appeals for the Fifth Circuit reversed the district court’s directed verdict on seaman status on the ground that a fact question existed as to whether Mr. Sharp worked aboard a fleet of vessels and, thus, was a seaman. Sharp v. Johnson Bros. Corp., 917 F.2d 885 (5th Cir.1990). The federal court docket sheet indicates that an Order remanding the case from the Fifth Circuit was entered on February 2, 1991. The matter was set for preliminary conference on March 18, 1991. The minute entry of March 19, 1991, indicates that the trial court ordered that no further discovery or amendments to the pleadings would be allowed without prior court approval.
On May 17, 1991, Mr. Sharp sought leave to amend his federal maritime complaint to add an alternative cause of action for vessel negligence under § 905(b) of the LHWCA, in the event it was determined that he was not a seaman, the same claim added to Mr. Sharp’s state court suit by amendment on November 23, 1988. Centennial filed an opposition to this motion, arguing that plaintiff had elected not to sue under § 905(b) prior to trial, his § 905(b) action was pending in Civil District Court, and the proposed amendment was time-barred and prejudicial to Centennial, which did not insure longe-shoremen coverage under its policy.
IsOn May 24, 1991, Centennial moved for summary judgment on the basis that Mr. Sharp’s settlement of his claim under the LHWCA precluded his filing a suit based on the general maritime law or the Jones Act. These two motions, as well as motions by the various defendants to amend the pleadings, were heard by the federal district court on June 26, 1991. Following the hearing the court granted Centennial’s summary judgment motion as well as the various defense motions for leave to amend. The court, however, denied Mr. Sharp’s motion for leave to amend his complaint to add the § 905(b) claim. In its oral reasons for denying the motion the court stated:
That claim [under sec. 905(b) ] is pending. There is a similar complaint in state court which was filed on November 23, 1988. The Court observes that certainly that was before this matter went to trial in this ease, and to wait until the case has gone to the Court of Appeals, and then come back, to attempt to exert a claim that was there and actually had been exerted in the state court suit is not the kind of circumstances the Court finds would permit it, even if it wanted to, to permit it to grant the motion to amend. And I don’t want to. I think it’s within my discretion, and I think this case has gone on long enough.
Judgment dismissing Mr. Sharp’s claims, as well as Wausau’s intervention, was signed on August 26,1991.
Mr. Sharp appealed the dismissal of his Jones Act claim. The Fifth Circuit affirmed the dismissal holding that a compensation Order issued by an administrative law judge ratifying the settlement of a compensation claim was not a voluntary payment under the LHWCA. Even though the question of status was not litigated in an adversarial proceeding, the Court found that Mr. Sharp had *571 invoked the jurisdiction of the Department of Labor by filing a claim for LHWCA benefits. As part of the settlement procedure under 33 U.S.C. § 905(b) the ALJ considered Mr. Sharp’s testimony and was aware he had brought a Jones Act claim |fifor the same injuries before it issued its findings of fact and the order extinguishing Johnson Bros.’ and Wausau’s liability for LHWCA benefits. Mr. Sharp obtained an order of the ALJ and the aegis of the Department of Labor to ratify and enforce this settlement, thus ensuring that his rights were more secure under the agreement than they would have been if the settlement were merely a contract between the parties. Consequently, the court found that a “formal award” had been made under the LHWCA, and Mr. Sharp could no longer bring a Jones Act suit for the same injuries. Sharp v. Johnson Bros., 973 F.2d 423, 425 (5th Cir.1992). Mr. Sharp applied for rehearing and rehearing en banc, which were denied on November 10, 1992. He applied for writs to the United States Supreme Court, which were denied on May 21, 1993, terminating the Jones Act litigation in federal court.
On January 12, 1994, Mr. Sharp filed a rule to show cause in this state court action why the exceptions of lis pendens and prescription should not be denied and dismissed, and why his claim under § 905(b) of the LHWCA should not proceed to trial on the merits in Civil District Court for Orleans Parish. Centennial supplemented its exceptions to assert exceptions of res judicata and no right of action on the basis that Mr. Sharp had settled and fully litigated his case in the federal court system, thereby barring the action in state court. The exceptions were heard on September 2, 1994. On September 7, 1994, the court entered judgment maintaining the exception of res judicata filed on behalf of Johnson Bros., St. Paul, and Centennial, dismissing plaintiffs claims. All other exceptions were dismissed. On September 29, 1994, the district court granted Centennial’s motion for new trial and entered judgment maintaining the exception of res judicata and dismissing the plaintiffs claims, but noted that, because of this 17ruling, the other exceptions were not considered or ruled upon. It is from this judgment that Mr. Sharp appeals.

LAW AND LEGAL ANALYSIS

Mr. Sharp argues that the trial court erred when it dismissed his claim for vessel negligence under § 905(b) of the LHWCA on the basis of res judicata because the § 905(b) claim was not adjudicated in the federal court action and the federal court refused to exercise jurisdiction over the § 905(b) claim as it was already pending in state court.
The defendants counter that a state court is required to apply the federal law of res judicata in order to determine the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction, citing Reeder v. Succession of Palmer, 623 So.2d 1268, 1271 (La.1993), cert. denied, 510 U.S. 1165, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994). Under federal law a second suit between the same parties based on the same common nucleus of operative facts is barred by res judicata. The defendants argue that since Mr. Sharp’s § 905(b) claim is against the same defendants and arises from the same accident as the claims that were considered in the federal court action, the trial court properly maintained the exception.
As to Mr. Sharp’s argument that his § 905(b) claim was somehow carved out of the federal court judgment, the defendants note that the federal law of res judicata bars all claims that were or could have been advanced based upon the same nucleus of operative facts. The defendants also point out the fact that the federal district court judge stated during the hearing on the various motions on June 24,1992, that:
I think that the settlement with the Department of Labor constitutes an election of remedies and precludes the filing of a suit on claims based on general maritime law or the Jones Act or Section 905(b).
IgThe defendants argue that, despite the district judge’s reference to the pending state court § 905(b) claim, the federal court did not hold that Mr. Sharp’s pending state court suit constituted a viable claim that had not been foreclosed by his election of remedies. In support of this position defendants quote the Fifth Circuit’s decision affirming *572 the trial court’s grant of summary judgment on the Jones Act and general maritime law claims:
The district court ruled that the settlement the [Department of Labor] approved constituted an election of remedies and precluded the filing of a suit based upon general maritime law or the Jones Act.
... Congress did not intend that the worker be able to pick and choose his remedy based upon which has conferred upon him a larger award. That is, the LHWCA was not intended to be a ‘stepping stone on the way to a jury award.’
Sharp, 973 F.2d at 425 and 427, quoting Fontenot v. A.W.I., Inc., 923 F.2d 1127, 1133 (5th Cir.1991).
The Louisiana Supreme Court recently considered the res judicata effect of a Plan of Reorganization confirmed by a bankruptcy court where the bankruptcy court specifically had declined to exercise jurisdiction over the state law claim. Terrebonne Fuel & Lube, Inc. v. Placid Refining Co., 95-0654, 95-0671 (La.1/16/96), 666 So.2d 624. Like the case at bar, the factual and procedural background of Terrebonne Fuel & Lube was very complex. It involved a ten-year battle that had been waged by the parties in the U.S. Bankruptcy court, the U.S. District Court, the U.S. Fifth Circuit as well as Orleans Civil District Court, this court, and the state Supreme Court. As the Supreme Court noted, “it appears that each time a party was unsuccessful in one forum, it rushed to assert its claim for relief in another.” Id. at 2, 666 So.2d at 626.
Terrebonne Fuel & Lube involved an attempt by a debtor to assert a claim for breach of contract against its creditor, who allegedly had forced it to seek bankruptcy protection. A Plan of Reorganization in bankruptcy was confirmed by the U.S. Bankruptcy Court on April 16, 1987, and became final on April 27, 1987. In that Plan, the debtor, Terrebonne, reserved all claims, demands, causes of action, and powers that it had under the Bankruptcy Code. On April 25, 1987, after the Plan was confirmed, but before it became final, Terrebonne filed an adversary complaint in the bankruptcy proceeding that was dismissed by the Bankruptcy Court, which chose to abstain from exercising jurisdiction over the breach of contract claim because the Debtor’s Reorganization Plan had been confirmed since April 16, and the Complaint was not filed until April 24. In the Matter of Terrebonne Fuel & Lube, Inc. v. Placid Refining Company, No. 86-01526, Adversary No. 97-0130 (Bank.E.D.La., June 29, 1989).
On July 24, 1989, Terrebonne filed suit for breach of contract in Civil District Court for Orleans Parish. Placid filed an exception of res judicata in the state court, alleging that the breach of contract claim was barred by the bankruptcy order confirming the Plan of Reorganization.[3] The state court judge dismissed the exception, and the matter proceeded to trial, which resulted in Placid being cast in judgment for $500,000. Placid appealed this judgment. This Court concluded that the bankruptcy court’s confirmation of the Plan of Reorganization acted as a | ipres judicata bar to the state court breach of contract lawsuit, based on its interpretation of Reeder v. Succession of Palmer, supra.
In its opinion reversing this Court the Supreme Court addressed the effect of the bankruptcy court’s confirmation of the Plan of Reorganization. The Court found that res judicata is an issue preclusion device found in both federal and state law. The Court noted that pre-1991 Louisiana law on res judicata was substantially narrower than federal law. The purpose of the law in both the state and federal systems is the same: the promotion of judicial efficiency and final *573 resolution of disputes by preventing needless relitigation. 96-0654, pp. 11-12, 666 So.2d at 631.
The Supreme Court noted that a reorganization plan that is confirmed by a bankruptcy court has the effect of a judgment rendered by a district court. The doctrine of res judi-cata bars any attempts to relitigate any matters that were or could have been raised therein. Id. The Court found that the Plan of Reorganization expressly made a reservation of the claims by Terrebonne against Placid, and that the bankruptcy court denied Terrebonne a forum, essentially directing it to file its action in state court. The Court found that “[ijnherent in the concept of res judicata is the principle that a party had the opportunity to raise the claim in the first adjudication.” The bankruptcy court’s refusal to exercise its jurisdiction as a matter of discretion precluded a finding of res judicata under the authority of Reeder. Terrebonne Fuel & Lube at 17, 666 So.2d at 634.
Finding that applying res judicata blindly or mechanically under these circumstances would not foster judicial economy or fundamental fairness to the parties, the Supreme Court reinstated the trial court judgment dismissing the exception of res judicata
Inin the ease at bar Mr. Sharp filed his § 905(b) action in state court on November 23,1988, seven months prior to his maritime claim being tried in federal court. He requested leave to amend the complaint in federal court in order to add the § 905(b) claim on May 17, 1991, well before the judgment dismissing his federal court suit was final. The defendants objected to the amendment because the § 905(b) claim was pending in state court. Although the federal court opined that the LHWCA settlement precluded all claims related to the accident, it refused to exercise jurisdiction of that claim, stating that: “You’ve got a case pending down in state court. Mr. Sharp shouldn’t be hurt.” The judgment dismissing the maritime claims did not address the § 905(b) claim. The Fifth Circuit’s affirmation of that dismissal addressed only the effect of a formal settlement approved by the LHWCA as it related to Mr. Sharp’s seaman status.
Principles of res judiciata are not ironclad. They must be applied so as to accomplish justice in the light of public policy. “While res judicata is a useful tool, it should not be used as a scythe applied mechanically to mow down claims where the party asserting the claim is not at fault for the lack of adjudication of that claim in the first suit.” Terrebonne Fuel & Lube at pp. 19-20, 666 So.2d at 635.
Mr. Sharp first asserted the § 905(b) claim in state court and he later attempted to assert it to the claim pending in federal court. The federal judge, acting within his discretion, refused to entertain the claim because it was pending in this state court suit. Mr. Sharp, like the plaintiff in Terrebonne Fuel & Lube, did everything to preserve his claim. To preclude his claim for vessel negligence on the basis of res judicata simply would not be fair. The defendants are not harmed by allowing this claim to proceed. They were aware of its existence, and, Ii2in fact, used that fact to object to the federal district court’s allowing it to be heard in the federal ease.
We, therefore, conclude that the trial court erred in maintaining the exception of res judiciata and dismissing Mr. Sharp’s § 905(b) claim. That judgment is reversed, and the case is remanded for further proceedings.
REVERSED AND REMANDED.

. St. Paul, however, did receive a copy of the settlement document before the case was argued in the Fifth Circuit.

. Counsel for Mr. Sharp, Johnson Bros., and Wausau advised the district cotut that they legitimately believed that the LHWCA settlement was irrelevant to the Jones Act action, since the receipt and release specifically reserved the Jones Act seaman status issue.

. In subsequent proceedings in federal court Placid attempted to have the Bankruptcy Court order Terrebonne to dismiss its state court action or to enjoin the state court action as barred by res judicata by the April 16, 1987 order of confirmation of the Plan of Reorganization. In its opinion arising from the appeal of the bankruptcy court’s dismissal of its motion, the Fifth Circuit noted that the breach of contract claim was a core proceeding, of which the bankruptcy judge should have taken jurisdiction. Instead, the bankruptcy court had abstained from deciding the breach of contract claim, and had "expressly permitted the debtor to proceed in state court." In the Matter of Terrebonne Fuel, No. 93-3553, 20 F.3d 1169 (5th Cir. April 4, 1994), slip op. at 6.