## SOUTHWEST MARINE, INC. *v.* GIZONI

No. 90–584.   Argued October 15, 1991—Decided December 4, 1991

WHITE, J., delivered the opinion of the Court, in which all other Members joined, except THOMAS, J., who took no part in the consideration or decision of the case.

*George J. Tichy II* argued the cause for petitioner. With him on the briefs were *Roy D. Axelrod, James J. McMullen, Jr., Jacqueline P. McManus,* and *Lloyd A. Schwartz.*

*Preston Easley* argued the cause and filed briefs for respondent.

*Robert A. Long, Jr.*, argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Deputy Solicitor General Shapiro, Allen H. Feldman, Kerry L. Adams*, and *Deborah Greenfield.** 

JUSTICE WHITE delivered the opinion of the Court.

The question presented is whether a maritime worker whose occupation is one of those enumerated in the Longshore and Harbor Workers' Compensation Act (LHWCA), 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.*, may yet be a "seaman" within the meaning of the Jones Act, 46 U. S. C. App. § 688, and thus be entitled to bring suit under that statute.

I

Petitioner Southwest Marine, Inc., operates a ship repair facility in San Diego, California. In connection with its ship repair activities, Southwest Marine owns several floating platforms, including a pontoon barge, two float barges, a rail barge, a diver's barge, and a crane barge. These platforms by themselves have no power, means of steering, navigation lights, navigation aids, or living facilities. They are moved about by tugboats, which position the platforms alongside vessels under repair at berths or in drydock at Southwest Marine's shipyard or at the nearby naval station. The platforms are used to move equipment, materials, supplies, and vessel components around the shipyard and on to and off of

---

*Briefs of *amici curiae* urging reversal were filed for Global Marine, Inc., et al. by *Forrest Booth, Winston E. Rice*, and *Eileen R. Madrid;* and for the Shipbuilders Council of America by *John L. Wittenborn* and *Franklin W. Losey.*

*John R. Hillsman* filed a brief for the United Brotherhood of Carpenters and Joiners of America as *amicus curiae* urging affirmance.

the vessels under repair. Once in place, the platforms support ship repairmen engaged in their work.

Southwest Marine employed respondent Byron Gizoni as a rigging foreman. Gizoni worked on the floating platforms and rode them as they were towed into place. Gizoni occasionally served as a lookout and gave maneuvering signals to the tugboat operator when the platforms were moved. He also received lines passed to the platforms by the ships' crews to secure the platforms to the vessels under repair. Gizoni suffered disabling leg and back injuries in a fall when his foot broke through a thin wooden sheet covering a hole in the deck of a platform being used to transport a rudder from the shipyard to a floating drydock.

Gizoni submitted a claim for, and received, medical and compensation benefits from Southwest Marine pursuant to the LHWCA. He later sued Southwest Marine under the Jones Act in the United States District Court for the Southern District of California, alleging that he was a seaman injured as a result of his employer's negligence. Gizoni also pleaded causes of action for unseaworthiness and for maintenance and cure. App. IV–4, IV–5. In addition to the above facts, Gizoni alleged in his complaint that Southwest Marine's floating platforms were "a group of vessels . . . in navigable waters," and that as a rigging foreman, he was "permanently assigned to said group of vessels." *Id.*, at IV–3.

The District Court granted Southwest Marine's motion for summary judgment on two grounds. The District Court determined as a matter of law that Gizoni was not a Jones Act seaman, finding that Southwest Marine's floating platforms were not "vessels in navigation," and that Gizoni was on board to perform work as a ship repairman, not to "aid in navigation." App. to Pet. for Cert. I–1, I–2. More important to our purposes here, the District Court further concluded that Gizoni was a harbor worker precluded from bringing his action by the exclusive remedy provisions of the LHWCA, 33 U. S. C. § 905(a). App. to Pet. for Cert. I–2.

The United States Court of Appeals for the Ninth Circuit reversed the determination that Gizoni was not a seaman as a matter of law, 909 F. 2d 385, 387 (1990), holding that questions of fact existed as to seaman status, *e. g.*, whether the floating platforms were vessels in navigation, whether Gizoni's relationship to those platforms was permanent, and whether he aided in their navigation. *Id.*, at 388. The Ninth Circuit also reversed the District Court's determination that the exclusive remedy provisions of the LHWCA precluded Gizoni from pursuing his Jones Act claim. The court concluded that the LHWCA by its terms does not cover "a master or member of a crew of any vessel," 33 U. S. C. § 902(3)(G), that this phrase is the equivalent of "seaman" under the Jones Act, and that the question of his seaman status should have been presented to a jury. 909 F. 2d, at 389. The Ninth Circuit thus rejected the notion that any employee whose work involved ship repair was necessarily restricted to remedy under the LHWCA, reasoning that coverage under the Jones Act or the LHWCA depended not on the claimant's job title, but on the nature of the claimant's work and the intent of Congress in enacting these statutes. *Ibid.*

We granted certiorari, 498 U. S. 1119 (1991), to resolve the conflict among the Circuits on this issue.[1] We now affirm the judgment of the Ninth Circuit.

---

[1] The Ninth Circuit in this case followed a decision by the Sixth Circuit, which held that "[a] plaintiff is not limited to the remedies available under the LHWCA unless he is unable to show that a genuine factual issue exists as to whether he was a seaman at the time of his injury." *Petersen* v. *Chesapeake & Ohio R. Co.*, 784 F. 2d 732, 739 (1986). To the contrary, the Fifth Circuit has previously held that "because longshoremen, shipbuilders and ship repairers are engaged in occupations enumerated in the LHWCA, they are unqualifiedly covered by that Act if they meet the Act's situs requirements; coverage of these workmen by the LHWCA renders them ineligible for consideration as seamen or members of the crew of a vessel entitled to claim the benefits of the Jones Act." *Pizzitolo* v. *Electro-Coal Transfer Corp.*, 812 F. 2d 977, 983 (1987). A later decision

## II

The Jones Act and the LHWCA each provide a remedy to the injured maritime worker; however, each specifies different maritime workers to be within its reach. In relevant part, the Jones Act provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . . ." 46 U. S. C. App. § 688(a). Under the LHWCA, the exclusiveness of liability provision in part states that the liability of an employer "shall be exclusive and in place of all other liability of such employer to the employee . . . ." 33 U. S. C. § 905(a). However, the term "employee," as defined in the LHWCA,[2] does *not* include "a

---

by the Fifth Circuit undercut much of the reasoning in *Pizzitolo* by limiting it to cases where "the evidence is insufficient to warrant a finding of seaman's status." *Legros* v. *Panther Services Group, Inc.*, 863 F. 2d 345, 349 (1988). The Fifth Circuit granted rehearing en banc, but the parties later settled and the appeal was dismissed. *Legros* v. *Panther Services Group, Inc.*, 874 F. 2d 953 (1989). With the opinion in *Legros* vacated, *Pizzitolo* remains the law in the Fifth Circuit, although its breadth may be in some question.

[2] In full, 33 U. S. C. § 902(3) provides:

"The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include—

"(A) individuals employed exclusively to perform office clerical, secretarial, security, or data processing work;

"(B) individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet;

"(C) individuals employed by a marina and who are not engaged in construction, replacement, or expansion of such marina (except for routine maintenance);

"(D) individuals who (i) are employed by suppliers, transporters, or vendors, (ii) are temporarily doing business on the premises of an employer

master or member of a crew of any vessel." § 902(3)(G). The District Court was therefore plainly wrong in holding that, as a matter of law, the LHWCA provided the exclusive remedy for all harbor workers. That cannot be the case if the LHWCA and its exclusionary provision do not apply to a harbor worker who is also a "member of a crew of any vessel," a phrase that is a "refinement" of the term "seaman" in the Jones Act. *McDermott Int'l, Inc.* v. *Wilander*, 498 U. S. 337, 349 (1991).[3]

The determination of who is a "member of a crew" is "better characterized as a mixed question of law and fact," rather

---

described in paragraph (4), and (iii) are not engaged in work normally performed by employees of that employer under this chapter;

"(E) aquaculture workers;

"(F) individuals employed to build, repair, or dismantle any recreational vessel under sixty-five feet in length;

"(G) a master or member of a crew of any vessel; or

"(H) any person engaged by a master to load or unload or repair any small vessel under eighteen tons net;

"if individuals described in clauses (A) through (F) are subject to coverage under a State workers' compensation law."

[3] Southwest Marine points as well to a separate exclusiveness of liability provision regarding the negligence of a vessel, 33 U. S. C. § 905(b), and places great emphasis on a passage that states:

"If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer."

This exclusivity provision applies, however, only "[i]n the event of injury to a person covered under this chapter [the LHWCA] caused by the negligence of a vessel." § 905(b). As we have already noted, the question whether Gizoni is "a person covered under this chapter" depends upon whether he is a "seaman" under the Jones Act. Like the companion exclusivity provision of § 905(a), § 905(b) does not dictate sole recourse to the LHWCA unless Gizoni is found *not* to be "a master or member of a crew of any vessel."

than as a pure question of fact. *Id.*, at 356. Even so, "[t]he inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel, and the employee's precise relation to it." *Ibid.* Our decision in *Wilander* jettisoned any lingering notion that a maritime worker need aid in the navigation of a vessel in order to qualify as a "seaman" under the Jones Act. "The key to seaman status is employment-related connection to a vessel in navigation. . . . It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work." *Id.*, at 355. In arriving at this conclusion, we again recognized that "the Jones Act and the LHWCA are mutually exclusive," *id.*, at 347 (citing *Swanson* v. *Marra Brothers, Inc.*, 328 U. S. 1 (1946)), for the very reason that the LHWCA specifically precludes from its provisions any employee who is "a master or member of a crew of any vessel."

Southwest Marine suggests, in line with Fifth Circuit precedent, that this fact-intensive inquiry may always be resolved as a matter of law if the claimant's job fits within one of the enumerated occupations defining the term "employee" covered by the LHWCA. However, this argument ignores the fact that some maritime workers may be Jones Act seamen performing a job specifically enumerated under the LHWCA. Indeed, Congress foresaw this possibility, and we have previously quoted a portion of the legislative history to the 1972 amendments to the LHWCA that states: " '[T]he bill would amend the Act to provide coverage of longshoremen, harbor workers, *ship repairmen*, ship builders, shipbreakers, and other employees engaged in maritime employment *(excluding masters and members of the crew of a vessel).*'" *Northeast Marine Terminal Co.* v. *Caputo*, 432 U. S. 249, 266, n. 26 (1977) (quoting S. Rep. No. 92–1125, p. 13 (1972)) (emphasis added). As we observed in *Wilander:* "There is no indication in the Jones Act, the LHWCA, or

elsewhere, that Congress has excluded from Jones Act remedies those traditional seamen who owe allegiance to a vessel at sea, but who do not aid in navigation." 498 U. S., at 354. While in some cases a ship repairman may lack the requisite connection to a vessel in navigation to qualify for seaman status, see, *e. g., Sun Ship, Inc.* v. *Pennsylvania,* 447 U. S. 715 (1980) (ship repairmen working and injured on land); *P. C. Pfeiffer Co.* v. *Ford,* 444 U. S. 69, 80, and n. 12 (1979), not all ship repairmen lack the requisite connection as a matter of law.[4] This is so because "[i]t is not the employee's particular job that is determinative, but the employee's connection to a vessel." *Wilander, supra,* at 354. By its terms the LHWCA preserves the Jones Act remedy for vessel crewmen, even if they are employed by a shipyard. A maritime worker is limited to LHWCA remedies only if no genuine issue of fact exists as to whether the worker was a seaman under the Jones Act.

Southwest Marine submits several arguments in an attempt to foreclose this Jones Act suit. First, Southwest Marine contends that our decision in *Wilander* will conflict with decisions holding that the LHWCA provides the exclusive remedy for certain injured railroad workers otherwise permitted by the Federal Employers' Liability Act, 45 U. S. C. § 51 *et seq.,* to pursue a negligence cause of action. See, *e. g., Chesapeake & Ohio R. Co.* v. *Schwalb,* 493 U. S. 40 (1989); *Pennsylvania R. Co.* v. *O'Rourke,* 344 U. S. 334 (1953). Such cases, however, can provide no meaningful guidance on

---

[4] Gizoni stipulates that he was a ship repairman for Southwest Marine and correctly notes that many ship repairmen are *excluded* from LHWCA coverage, even though ship repairmen are expressly enumerated as a category of "harborworker" *included* within its coverage. See 33 U. S. C. § 902(3)(F) (individuals employed to repair recreational vessels under 65 feet in length); § 902(3)(H) (persons engaged to repair small vessels under 18 tons net). We find it significant that such clear exclusions of certain ship repairmen fall on either side of the exclusion here at issue for "a master or member of a crew of any vessel." § 902(3)(G).

the issue here, for the LHWCA contains no exclusion for railroad workers comparable to that for Jones Act seamen.

Next, Southwest Marine advances a "primary jurisdiction" argument suggesting that, where a maritime worker is "arguably covered" by the LHWCA, the district court should stay any Jones Act proceeding pending a final LHWCA "administrative agency" determination that the worker is, in fact, a "master or member of a crew." We find no indication in the LHWCA that Congress intended to preclude or stay traditional Jones Act suits in the district courts. Indeed, the LHWCA anticipates that such suits could be brought. Title 33 U. S. C. § 913(d) tolls the time to file LHWCA claims "[w]here recovery is denied to any person, in a suit brought at law or in admiralty to recover damages in respect of injury or death, on the ground that such person was an employee and the defendant was an employer within the meaning of this chapter and that such employer had secured compensation to such employee under this chapter."

Southwest Marine seeks to support its primary jurisdiction argument by pointing to the relation between the Federal Employees' Compensation Act (FECA), 5 U. S. C. § 8101 *et seq.*, and the Federal Tort Claims Act (FTCA), 28 U. S. C. § 2671 *et seq.* But FECA contains an "unambiguous and comprehensive" provision barring any judicial review of the Secretary of Labor's determination of FECA coverage. *Lindahl* v. *Office of Personnel Management*, 470 U. S. 768, 780, and n. 13 (1985); see 5 U. S. C. § 8128(b). Consequently, the courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies. The LHWCA contains no such provision. Likewise, we reject Southwest Marine's argument that agency proceedings under the LHWCA require the jurisdictional limitations we have found the National Labor Relations Act (NLRA), 29 U. S. C. § 151 *et seq.*, to place on state and federal courts in favor of the proceedings conducted by the National Labor Relations Board.

See, e. g., *Longshoremen* v. *Davis*, 476 U. S. 380, 389–390 (1986); *San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236, 243–245 (1959). The administrative proceedings outlined under the LHWCA in no way approach "the NLRA's 'complex and interrelated federal scheme of law, remedy, and administration'" requiring pre-emption in those cases. *Longshoremen, supra,* at 389 (quoting *Garmon, supra,* at 243). Neither is it "essential to the administration" of the LHWCA that resolution of the question of coverage be left "'in the first instance'" to agency proceedings in the Department of Labor. *Longshoremen, supra,* at 390 (quoting *Garmon, supra,* at 244–245).

Finally, Southwest Marine suggests that an employee's receipt of benefits under the LHWCA should preclude subsequent litigation under the Jones Act. To the contrary, however, we have ruled that where the evidence is sufficient to send the threshold question of seaman status to the jury, it is reversible error to permit an employer to prove that the worker accepted LHWCA benefits while awaiting trial. *Tipton* v. *Socony Mobil Oil Co.*, 375 U. S. 34, 37 (1963). It is by now "universally accepted" that an employee who receives voluntary payments under the LHWCA without a formal award is not barred from subsequently seeking relief under the Jones Act. G. Gilmore & C. Black, Law of Admiralty 435 (2d ed. 1975); see 4 A. Larson, Workmen's Compensation Law § 90.51, p. 16–507 (1989) (collecting cases); *Simms* v. *Valley Line Co.*, 709 F. 2d 409, 412, and nn. 3 and 5 (CA5 1983). This is so, quite obviously, because the question of coverage has never actually been litigated. Moreover, the LHWCA clearly does not comprehend such a preclusive effect, as it specifically provides that any amounts paid to an employee for the same injury, disability, or death pursuant to the Jones Act shall be credited against any liability imposed by the

LHWCA.[5]  33 U. S. C. § 903(e).   See Gilmore & Black, *supra*, at 435.

## III

Because a ship repairman may spend all of his working hours aboard a vessel in furtherance of its mission—even one used exclusively in ship repair work—that worker may qualify as a Jones Act seaman.  By ruling as a matter of law on the basis of job title or occupation alone, the District Court foreclosed Gizoni's ability to make this showing. "If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." *Wilander*, 498 U. S., at 356.  The Ninth Circuit concluded that questions of fact existed regarding whether the floating platforms were vessels in navigation, and whether Gizoni had sufficient connection to the platforms to qualify for seaman status.[6]  Gizoni alleges facts in support of each of these propositions—facts which Southwest Marine disputes.   Compare Brief for Respondent 11 with Brief for Petitioner 3.   Summary judgment was inappropriate.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

---

[5] For this same reason, equitable estoppel arguments suggested by *amicus* Shipbuilders Council of America must fail.   Where full compensation credit removes the threat of double recovery, the critical element of detrimental reliance does not appear.  See *Heckler* v. *Community Health Services of Crawford County, Inc.*, 467 U. S. 51, 59 (1984); *Lyng* v. *Payne*, 476 U. S. 926, 935 (1986).   Argument by *amicus* would force injured maritime workers to an election of remedies we do not believe Congress to have intended.

[6] The Ninth Circuit also found questions of fact to remain concerning whether Gizoni aided in the navigation of these platforms.   After *McDermott Int'l, Inc.* v. *Wilander*, 498 U. S. 337 (1991), however, only "employment-related connection to a vessel in navigation" is required. *Id.*, at 355.   To be a seaman, the employee need not aid in navigation.