**Albert HATCH, Plaintiff–Appellant,**

v.

**DUROCHER DOCK AND DREDGE, INCORPORATED, Defendant–Appellee.**

**No. 93–1409.**

United States Court of Appeals, Sixth Circuit.

Argued May 6, 1994.

Decided May 25, 1994.*

---

* This decision was originally issued as an "unpublished decision" filed on May 25, 1994. On

Leonard C. Jaques and Donald A. Krispin (argued and briefed), Jaques Admiralty Law Firm, Detroit, MI, for plaintiff-appellant.

Mark J. Seplak, Susan Condon, Edward M. Kay (briefed), James T. Ferrini, Robert N. Dunn and Kimbley A. Kearney (argued), Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, for defendant-appellee.

Before: KEITH and SUHRHEINRICH, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Plaintiff Hatch sued his employer, Durocher Dock and Dredge, Inc. (Durocher) for personal injuries suffered in the course of his employment aboard a floating work platform, the *Samuel II*. The district court granted summary judgment to Durocher on the ground that Hatch was not a "seaman" within the meaning of the Jones Act, 46 U.S.C.App. § 688, or as that term is used in general maritime law, 820 F.Supp. 314. We agree and, for that reason, **AFFIRM**.

## I.

The facts in this case are not disputed. Hatch was employed by Durocher and assigned to a project rebuilding certain docks on the Saginaw River at Bay City, Michigan. The nature of the work and the conditions on the shore side of the docks required that most of the work be done from the river. Working on two barges, the *Samuel II* and Barge 504, Hatch and others would drive the pilings for the new docks using the crane on board the *Samuel II*. Then, either working from the barges or from temporary platforms built onto the pilings, Hatch and his co-workers installed the dock's crossbeams and flooring.

Durocher purchased the *Samuel II*, a flat deck barge, in 1988. It measures approximately 60' × 40', is of blunt design, and has no internal propulsion system. Built as a derrick and work platform, the *Samuel II*, its cranes and crew are towed from jobsite to

August 15, 1994, the court designated the opinion as one recommended for full-text publication.

jobsite on the shores of the Great Lakes and their tributaries.

Hatch was assigned to the *Samuel II* and classified as a "deckhand" or a "deckhand/piledriver." Hatch traveled with the *Samuel II* from Cheboygan to Bay City project via Lake Huron, a distance of over 175 miles. His primary assignment was driving the new piles, but Hatch also assisted in moving the *Samuel II* along the new docks as work progressed and in moving it at the end of a workday to another dock where it would be protected from rough weather overnight. Hatch was injured on July 2, 1991, while performing construction work. Specifically, Hatch injured his back when he stepped from a temporary piling platform to the deck of the *Samuel II* while carrying four angle irons.

## II.

■ The Jones Act was enacted to provide a broad federal remedy for a discrete class of workers. It provides:

> Any *seaman* who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury....

46 U.S.C.App. § 688(a) (emphasis added). The threshold inquiry, therefore, is whether the plaintiff qualifies as a "seaman;" a term not defined in the Jones Act. The Supreme Court, in two recent cases, has stated that "[t]he inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel and the employee's precise relationship to it." *McDermott International, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991); *Southwest Marine Inc. v. Gizoni,* 502 U.S. 81, ——, 112 S.Ct. 486, 492, 116 L.Ed.2d 405 (1991). Thus, the question of seaman status is a mixed question of fact and law and, as such, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was ... [a seaman], it is a question for the jury." *McDermott,* 498 U.S. at 356, 111 S.Ct. at 818; *Gizoni,* 502 U.S. at ——, 112 S.Ct. at 494. Determination of the proper standard, however, is purely a question of law and the issue of "seaman" status may be

decided by the court if the facts and the proper legal definition admit only one conclusion. *McDermott,* 498 U.S. at 356, 111 S.Ct. at 818; *Gizoni,* 502 U.S. at ——, 112 S.Ct. at 494.

■ The district court granted summary judgment to Durocher on the basis of the standard recently adopted by the First Circuit in *DiGiovanni v. Traylor Brothers, Inc.,* 959 F.2d 1119 (1st Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992). There, on similar facts, the First Circuit reasoned that "[a] worker becomes a seaman not by reason of the physical characteristics of the structure to which he is attached, but because its being operational 'in navigation' exposes him to a 'a seaman's hazards.'" *Id.* at 1123. Thus, the court held that, "if a barge, or other float's 'purpose or primary business is not navigation or commerce,' then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit." *Id.* The district court in the present case, based upon its conclusion that the *Samuel II*'s "primary purpose" was indisputably construction rather than "navigation or commerce," held that summary judgment for Durocher was proper because the barge was not in transit at the time Hatch was injured.

Hatch argues that *DiGiovanni* is contrary to the law of this circuit as expressed in *Petersen v. Chesapeake & Ohio R. Co.,* 784 F.2d 732 (6th Cir.1986). There, this court stated that "[i]f a vessel 'is engaged as an instrument of transportation or commerce on navigable waters, that vessel is "in navigation" although moored to a pier, in a repair yard for periodic repairs or while temporarily attached to some object.'" *Id.* at 738. *Petersen,* as the quoted language makes clear, is not inconsistent with the test devised in *DiGiovanni. Petersen* involved ferries used to transport railroad cars across the Great Lakes which, it was not disputed, were "instrument[s] of transportation or commerce." *Id.* The only issue in *Petersen* was whether the plaintiff, a repairman who worked on the railroad cars while they were in transit, could be considered a seaman. The court held that a jury could so find. *Id.* The present case,

and *DiGiovanni*, address the entirely different question of how "seaman" status should be determined where the primary purpose of the vessel is *not* transportation or commerce.

Hatch also argues that this court should adopt the standard articulated in *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959). There, the Fifth Circuit stated that there were only two elements to seaman status: (1) that plaintiff was "assigned permanently to a vessel (*including* special purpose structures not usually employed as a means of transport by water *but designed to float on water*) or performed a substantial part of his work on the vessel," and (2) plaintiff's work "contributed to the function of the vessel or the accomplishment of its mission...." *Id.* at 779 (emphasis added).[1] The First Circuit, however, noted that no court, including the Fifth Circuit, adheres to the "floats on water" test anymore, *DiGiovanni*, 959 F.2d at 1123–24, and we decline Hatch's invitation to resurrect it here.

### III.

Therefore, because the "primary purpose" test in *DiGiovanni* is consistent with this circuit's precedent and because it provides a well-reasoned solution to the present issue, we agree with the district court that it should be applied in this case. There being no dispute as to the facts material to that test, *i.e.* that the *Samuel II*'s primary purpose was construction, not transportation, and that Hatch was not injured while the barge was actually underway, summary judgment was properly granted in favor of Durocher and that decision is **AFFIRMED.**

---

1. The second part of this test was recently affirmed by the Supreme Court, *see McDermott,* 498 U.S. at 354–55, 111 S.Ct. at 817, but the Court has never had occasion to address the validity of the "floats on water" element established in *Robison.*