**DONE.**

Gerald VOWELL, Plaintiff

v.

G & H TOWING COMPANY, Defendants.

Civ. A. No. G–94–369.

United States District Court, S.D. Texas, Galveston Division.

Dec. 16, 1994.

Russell G. Burwell, Burwell Enos & Baron, Texas City, TX, for plaintiff.

Robert A. Davee, Mills, Shirley, Eckel & Bassett, Galveston, TX, for defendant.

### ORDER DENYING MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment pursuant to

Fed.R.Civ.P. 56(c). For the reasons stated below, Defendant's Motion is DENIED.

## I. Background

Plaintiff brings this action under the Jones Act, 46 U.S.C.App. § 688, for injuries he allegedly sustained while performing repairs on Defendant's vessel. Plaintiff worked as a mechanic for the Defendant. The Defendant, a Texas corporation with its headquarters in Galveston, owns pro hac vice and operates approximately 25 harbor tugboats in the Ports of Galveston, Houston, Freeport, and Corpus Christi. Plaintiff's job is to repair the engines on Defendant's tugs. Plaintiff reported to the Defendant's shop on Pelican Island, where he received orders of where to go and what boats to repair. His job required him to perform "check rides" on the tugs on which he worked to make sure that the repairs were done properly. Plaintiff would remain on the tug on which he was working for as long as it was necessary to complete the requisite repairs. The time Plaintiff spent on board a vessel could range from anywhere from a few minutes to two days. It was also common practice for Plaintiff to shower and change clothes on the tug after completing the requisite repairs.

Although Defendant asserts that Plaintiff's job also consisted of performing mechanical repairs to land-based equipment, Plaintiff contends that he performed very few land-based duties. Plaintiff asserts that he did not perform plumbing or maintenance work around the shop located on Pelican Island, nor was he assigned to work on Defendant's trucks. The only work that Plaintiff conducted on the trucks occurred when he would check the oil and fluids to ensure the trucks would make it to and from the tugs on which he was making repairs. Plaintiff maintains that his working time was spent on the tugboats making necessary repairs.

Plaintiff ate his meals and slept at home, and worked a regular 40–hour work week. While performing repairs on a vessel, he reported to the port engineer on call, rather than to the master or mate of the vessel. Plaintiff does not have and never has had seaman's papers, and such licensing is not required to perform his job. Additionally, Plaintiff had different hours, responsibilities, and lodging than did the members of the vessels' crews.

On or about May 21, 1993, Plaintiff was sent to Corpus Christi to repair the engines on the M/V TITAN, one of the tugs owned by Defendant. He was accompanied by Le-Roy Wheaton, the port engineer, and Harold Sullivan, another shore-based mechanic. The M/V TITAN was taken out on the water so that they could determine the nature of the problem. The head gasket on the No. 2 cylinder needed to be replaced as part of this operation. A chain fall was suspended on an overhead beam to aid in the lifting of the head. This work was performed in extremely close quarters.

After pulling off the head with the chain fall, cleaning it, and replacing the gasket, Plaintiff and Harold Sullivan proceeded to reinstall the cylinder head. Plaintiff was guiding the head, which was suspended by a chain, while Mr. Sullivan pulled on the rope block. About the time the head reached Plaintiff at eye-level, it allegedly swung back towards him, causing him to arch his back in order to avoid being hit. This allegedly resulted in injuries to Plaintiff's back.

In its Motion for Summary Judgment, Defendant asserts that: (1) Plaintiff is not a Jones Act seaman; and (2) by deposition, Plaintiff has judicially admitted that Defendant was not negligent and that no portion of the ship or her appurtenances was inadequate.

## II. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id.* See also *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the non-moving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Matsushita, supra,* 475 U.S. at 585–87, 106 S.Ct. at 1355; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987). Where the moving party has met its Rule 56(c) burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita, supra,* 475 U.S. at 596–97, 106 S.Ct. at 1361–62 (quoting Fed. R.Civ.P. 56(e)) (emphasis in original).

### III. Discussion

#### A. Seaman Status Under the Jones Act

■ Under the Well–Pleaded Complaint Rule, the Plaintiff must allege in a Jones Act claim: (1) that the injured workman was assigned permanently to a vessel or an identifiable fleet of vessels, or performed a substantial part of his work on a vessel or identifiable fleet of vessels; and (2) the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or the accomplishment of the mission, or to the operation or welfare of the vessel in navigation in terms of her maintenance during her movement or an-

chorage for future trips. *Offshore v. Robison,* 266 F.2d 769, 779 (5th Cir.1959); *Barrett v. Chevron,* 781 F.2d 1067, 1072 (5th Cir. 1986).

■ The question of a seaman's status under the Jones Act is a mixed question of law and fact. *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 86–89, 112 S.Ct. 486, 491–92, 116 L.Ed.2d 405 (1991). Summary judgment on seaman status is rarely proper, and even marginal cases should go to the jury. *Bouvier v. Krenz,* 702 F.2d 89, 90 (5th Cir.1983). If a reasonable person, applying the proper legal standard, could differ as to whether or not a person is a seaman, the question must go before the jury. *McDermott Intern., Inc. v. Wilander,* 498 U.S. 337, 355–56, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991).

■ In order to assess whether or not a person is permanently assigned to a fleet of vessels, or performs a substantial amount of his work on a fleet, the Court must first determine what constitutes a "fleet." A "fleet" is "an identifiable group of vessels acting together or under one control." *Coats v. Penrod,* 5 F.3d 877, 890 (5th Cir.1993) (quoting *Barrett,* at 1074)). The employer need not be the owner or operator of the group of vessels. *Id.* In the present case, however, the group of vessels in question *are* both owned pro hac vice and controlled by the Defendant. As such, they are necessarily under one control. Therefore, this Court finds that the group of tugboats owned and operated by the Defendant is a "fleet" for purposes of Jones Act analysis.

■ Having found that Defendant's tugboats constituted a fleet, it must be established that the Plaintiff was either permanently assigned to that fleet or that he did a substantial amount of work on that fleet. In *Branniff v. Jackson Ave.—Gretna Ferry, Inc.,* 280 F.2d 523 (5th Cir.1960), the Fifth Circuit held that a master mechanic and his assistant who performed maintenance, repair, and overhaul work on several of the defendant's ferries were seamen under the Jones Act. *See also, Bozeman v. Ensco Drilling company,* 1991 WL 216911 (S.D.Tex.1991) (finding that a shore-based

maintenance superintendent was a Jones Act seaman because all of his efforts were directed to the continued functioning of the vessels). In *Branniff*, the mechanic lived on the land, worked on the ferries that were need of repair, and stayed on the ferry only as long as was necessary to complete the repairs. *Id.* at 525–28. The Plaintiff in *Branniff* did not sleep aboard the ferries, nor was he assigned to any one ferry, yet he did spent most of his working time aboard the ferries. Furthermore, he had an assigned work week that was different from that of the crews on the ferries. *Id.* at 525–27.

In the instant case, Plaintiff's situation is the same as that of the mechanic in *Branniff.* The Plaintiff lives on the land, but he spends nearly all of his working hours repairing and working on Defendant's tugboats. Plaintiff works a different schedule from the crew members of the tugboats. Plaintiff works on different tugboats, depending on which of them are in need of his services, but all of the tugboats remain under the control of the Defendant. Plaintiff was permanently assigned to Defendant's fleet of tugboats.

Additionally, the nature of Plaintiff's work was such that it "contributed to the mission of the vessel or fleet." *Barrett, supra,* at 1072–73. Plaintiff was called on to repair tugboats when it was beyond the capability of the engineer aboard the vessel. Clearly, the repairs Plaintiff performed on Defendant's tugboats ensured that the fleet of tugboats could function safely and efficiently. Thus, given that a genuine issue of material fact exists, this Court cannot find as a matter of law that the Plaintiff is not a seaman under the Jones Act.

**B. Judicial Admission**

■ Defendant alleges that Plaintiff has judicially admitted that the Defendant was not negligent, and therefore is barred from asserting his Jones Act claim at this time. The Defendant relies on responses given by Plaintiff during his deposition. He responded, "no, sir," when he was asked if he felt Mr. Sullivan had done anything wrong. He responded, "not as I could tell," when he was asked if any of the equipment they had been using had contributed to his accident. Final-ly, he stated that he was not aware of any negligent behavior or failure to act on behalf of another person that caused the accident.

Answers such as "not as I could tell" or "not that I am aware of," do not necessarily and conclusively mean that the equipment was not defective or contributed, however slightly, to his accident, nor do they mean that someone else was not responsible for the accident. It simply indicates that the Plaintiff, himself, does not know.

Defendant failed to point out that Plaintiff repeatedly stated that Mr. Sullivan "jerked" the rope, causing the cylinder head to suddenly rise up to eye-level. (Deposition of Gerald Vowell at 123, line 18; 127, line 19; 128, line 15; 129, lines 3–5, 11, 16–17). These references as to the way in which Mr. Sullivan performed his task of raising the cylinder head present a genuine issue of material fact. It is for the jury to decide if the actions taken by Mr. Sullivan were negligent and caused the injury to Plaintiff. Plaintiff's responses to Defendant's questions are not legally conclusive admissions that there was no negligence on the part of the Defendant or its agents and employees.

For the reasons set forth above, Defendant's Motion for Summary Judgment is **HEREBY DENIED.**

**IT IS SO ORDERED.**