JiLANDRIEU, Judge.
Andrew Collins, a member of an oil exploration recording crew, was injured in July 1991 when the airboat in which he was being transported from a quarterboat[1] to the day’s work site hit a mud embankment or levee. In July 1992, Collins filed this lawsuit against his employer GFS Company, Inc. (GFS) and its insurer, The Travelers Insurance Company (Travelers). Based on the fact that at the time of the accident he was quartered and transported on boats, Collins alleged damages under the Jones Act, the Longshore and Harbor Workers’ Compensation Act (LHWCA), as well as General Maritime Law negligence and unseaworthiness.
Asserting that Collins was not a Jones Act seaman entitled to maintain such an action under the Jones Act, GFS moved for summary judgment as to that issue. In addition, GFS and Travelers moved for Summary Judgment claiming that Collins had no cause of action under the LHWCA. After a hearing on the motions, the trial court found that Collins was not a Jones Act |2seaman. Accordingly, partial summary judgment was rendered dismissing the Jones Act claim, but summary judgment was denied as to the LHWCA claim.[2] We affirm.
On appeal, Collins argues that the determination of seaman status is inappropriate for summary judgment. Where the evidence does not support a finding as matter of law that a claimant is permanently assigned to a Jones Act vessel, however, seaman status may be decided on summary judgment. Gremillion v. Gulf Coast Catering Co., 904 F.2d 290, 292 (5th Cir.1990); see also Folse v. Western Atlas Intern, Inc., 580 So.2d 482, 483 (La. 4th Cir.1991), reversed on factual grounds, 593 So.2d 341 (La.1992) (although the determination of seaman status under the Jones Act is inherently a factual question, if the requisite proof is absent, a court may decide that seaman status is lacking as a matter of law).
In support of its motion for summary judgment, GFS submitted Collins’ deposition and GFS payroll and accounting documents. Collins stated that he was “assigned by his employer, GFS, to work with a seismic crew” and described his particular job as “testing for gas, water and oil, you know, you lay the geophone jugs out. They got a sharp point. You stomp them in the ground. When you shoot the dynamite, the ground shakes and you got a box recording, and it tells you what is down there.” In response to the question as to where his work was performed, Collins answered “They cut a trail out. They got a bush cutter, come cut the trail out and we go through, laying it out like that” and when asked whether this was done on land, Collins answered affirmatively. The GFS documents indicate that 68% of the time Collins worked on high land |3in Mississippi and Louisiana land areas and the crew was housed in local motels. The only evidence submitted by Collins in opposition to summary judgment, the deposition of GFS supervisor Keith Stevens, corroborated GFS evidence that Collins was a member of the recording crew responsible for laying out geophone receivers and receiver lines to record data.
Because the determination of seaman status is fact-specific, depending upon the nature of the vessel and the employee’s precise relation to it, it is the employee’s connection to a vessel rather than the employee’s particular job that is determinative and, accordingly, “seaman” under the Jones Act is defined solely in terms of the employee’s *501 connection to a vessel in navigation. Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991).
In this case, the evidence clearly indicates that Collins work on the recording crew was not in any way connected to a vessel in navigation. Rather, the airboat and quarter-boat on which he bases his claim for seaman status were ancillary to the work of the GFS Crew, ie. supplied transportation and housing for the crew while it was performing recording work in the marshlands. In any event, to qualify as a Jones Act seaman, workers must perform a substantial amount of their work over water, Barrett v. Chevron U.S.A., Inc., 781 F.2d 1067, 1076 (5th Cir. 1986), and Collins worked on high land more than 60% of the time. In addition, the Jones Act and LHWCA[3] are mutually exclusive remedies for maritime workers. See Gizoni, 502 U.S. at 87-88, 112 S.Ct. at 492. Accordingly, the trial court did not err in determining that Collins was not a Jones Act seaman.
Because his general maritime law negligence claim based upon 38 U.S.C.A. § 905(b) (West 1986) is still pending, Collins argues that under Pape v. ODECO, Inc., 643 So.2d 229, 232 (La.App. 4th Cir.1994) his other claims may not be dismissed. Pape, however, pertained to exceptions of no cause of action and no right of action and thus is inapplicable.
Reviewing the record de novo, we find that there exists no genuine issue of material fact and that summary judgment on the plaintiffs Jones Act status was appropriate. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED

. The quarterboat provided sleeping and eating facilities for the oil exploration crews while work was done in the vicinity.

. Thus, Collins' claim under the LHWCA is still pending. The trial court did not address the claims for negligence and unseaworthiness which Collins asserted under General Maritime Law.

. Collins' LHWCA action is still pending.