# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2013

No. 11-30606

Lyle W. Cayce
Clerk

JASON GRAB, et al., *Plaintiffs*

v.

BOH BROTHERS CONSTRUCTION COMPANY, L.L.C., et al., *Defendants*

JACOB KINCHEN, *Plaintiff – Appellee Cross-Appellant*, and
WENDY KINCHEN, *Plaintiff – Cross-Appellant*

v.

TRAYLOR BROTHERS, INC., KIEWET SOUTHERN COMPANY &
MASSMAN CONSTRUCTION COMPANY, a Joint Venture, *Defendant –
Cross-Appellee*, and BOH BROTHERS CONSTRUCTION COMPANY, L.L.C.,
*Defendant – Appellant Cross-Appellee*

LARY SCOTT ABSHIRE, individually and on behalf of his minor child,
Kinley Lyric-Grace Abshire, *Plaintiff – Appellee Cross-Appellant*

v.

TRAYLOR BROTHERS, INC., KIEWET SOUTHERN COMPANY &
MASSMAN CONSTRUCTION COMPANY, A Joint Venture, *Defendant –
Cross-Appellee*, and BOH BROTHERS CONSTRUCTION COMPANY, L.L.C.,
*Defendant – Appellant Cross-Appellee*

CONSOLIDATED WITH No. 11-30999

JASON GRAB, *Plaintiff*

v.

BOH BROTHERS CONSTRUCTION COMPANY, L.L.C., *Intervenor-
Appellant*, and BOH BROTHERS CONSTRUCTION COMPANY, L.L.C.,
*Defendant-Appellant*

JACOB KINCHEN, *Plaintiff-Appellee*

v.

BOH BROTHERS CONSTRUCTION COMPANY, L.L.C., *Defendant-
Appellant*

LARY SCOTT ABSHIRE, individually and on behalf of his minor child, Kinley Lyric-Grace Abshire, *Plaintiff-Appellee*

v.

BOH BROTHERS CONSTRUCTION COMPANY, L.L.C., *Defendant-Appellant*

Appeals from the United States District Court
for the Eastern District of Louisiana
Nos. 2:09-CV-3439; 2:09-CV-4128; 2:10-CV-838

Before DAVIS, JONES, and SMITH, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellees are two ironworkers who were severely injured in the course of the reconstruction of the Interstate-10 twin span bridge across Lake Pontchartrain. The appellees performed part of their work from a derrick barge, the BIG MAC, and part of their work from the bridge structure. The district court determined one employee to be a seaman on summary judgment, and determined the other employee to be a seaman after a bench trial. Because the record supports the district court's conclusion that the appellees contributed to the mission of the BIG MAC and had a connection to it which is substantial in terms of nature and duration, we AFFIRM the judgment based on the district court's conclusion that both men are seamen under the Jones Act.

I.

In 2008, Boh Brothers Construction Company, L.L.C. ("Boh Brothers"); and Traylor Brothers, Inc., Kiewet Southern Co., and Massman Construction Co., a Joint Venture ("the Joint Venture"); were jointly engaged in the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

construction of the new Interstate-10 twin span bridge across Lake Pontchartrain, connecting New Orleans with Slidell, Louisiana. Boh Brothers received the contract to construct the approaches of the new bridge, while the Joint Venture received the contract to construct the high-rise portions of the new bridge.

Jacob Kinchen ("Kinchen") and Lary Scott Abshire ("Abshire") were ironworkers employed by Boh Brothers to help construct the bridge. On July 3, 2008, Kinchen and Abshire were traveling from the bridge work site to shore in a crew boat piloted by Kinchen when the boat allided with a Joint Venture survey tower in Lake Pontchartrain. The survey tower that was struck was one of four such towers constructed in Lake Pontchartrain to ensure the proper construction of the bridge. The tower stood seven to nine feet above the water, measured 42 inches across at its base and 24 inches across at its top, and was capped with a white navigational light. At the time of the accident, Kinchen's vision was partially obstructed by two large tires that a Boh Brothers supervisor had placed on the front of the boat. Kinchen and Abshire sustained severe injuries as a result of the allision.

At the time of the accident, Kinchen was employed by Boh Brothers as an ironworker foreman and headed a crew that was responsible for placing the girders on the bridge. Abshire was assigned as an ironworker in Kinchen's crew, and the day of the accident was Abshire's first day of employment. Both employees were land-based and traveled daily to and from the work site by crewboat. Kinchen and his crew operated from a large crane barge, the BIG MAC, which was used to lift the girders and materials and support the crew necessary to construct the bridge. The ironworker crew was responsible for erecting work platforms around bridge pilings, setting caps on the pilings, setting pads, and setting the bridge girders. Abshire and Kinchen, as members of the ironworker crew, were also responsible for assisting in the navigation of

3

the BIG MAC from one work station to another. Although the barge remained stationary most of the time, it was necessary to routinely move the barge, with the aid of a tugboat, along the length of the bridge as work progressed and away from the bridge at the end of each day.

Following the accident, Kinchen and Abshire brought suit against Boh Brothers and the Joint Venture, each alleging that as seamen, they were entitled to recover damages under the Jones Act and general maritime law. The trial court granted summary judgment in Kinchen's favor on the issue of seaman status. Specifically, the court found that the evidence established that Kinchen contributed to the bridge-construction function of the BIG MAC, that he spent 30–95% of his time aboard the barge, that he was partially responsible for assisting with the navigation and maintenance of the barge, and that his work sufficiently exposed him to traditional maritime perils.

Because Abshire was injured his first day on the job, the district court denied his summary judgment motion on seaman status and proceeded to a bench trial on this issue. After the bench trial, the district court concluded that Abshire was also a seaman. It found that the testimony established that Abshire's prospective employment with Boh Brothers would have required him to assist in the mission of the BIG MAC, spend at least 30% of his time aboard the barge, assist with its navigation and maintenance, and sufficiently expose him to traditional maritime perils on Lake Pontchartrain.

In its findings of fact, the district court also apportioned fault for the accident 50% to Kinchen and 50% to Boh Brothers, with no fault being allocated to Abshire or the Joint Venture. Specifically, the court found that Boh Brothers negligently placed the tires on the crew boat in a manner that would obscure the pilot's view, and that Kinchen was not attentive while piloting the boat knowing that he was in a construction zone and that his vision was obstructed. The

4

district court awarded Abshire general damages of $1,325,000 and Kinchen general damages of $900,000, subject to a reduction for his comparative fault.

## II.

We review an order granting a motion for summary judgment *de novo*. *Storebrand Ins. Co. U.K., Ltd. v. Emp'rs Ins. of Wausau*, 139 F.3d 1052, 1055 (5th Cir. 1998). Summary judgment is warranted when the pleadings, depositions, interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). In contrast, we review a district court's findings of fact for clear error and its legal conclusions *de novo*. *Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 543 (5th Cir. 2009).

## III.

Boh Brothers first argues that the district court erred in its determination that Kinchen and Abshire were "seamen" entitled to the protections of the Jones Act. To qualify as a seaman, first "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (quoting *McDermott Int'l., Inc. v. Wilander*, 498 U.S. 337, 355 (1991)). Second, "a seaman must have a connection to a vessel . . . that is substantial in terms of both its *duration* and its *nature*." *Id.* (emphasis added). "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 370.

As an initial matter, there can be little doubt that both Kinchen and Abshire satisfy the first prong of the *Chandris* seaman test. It is undisputed that the BIG MAC is a vessel in navigation, and that Kinchen and Abshire's primary responsibility was to assist in the accomplishment of the vessel's purpose:  the

5

assembly of the Pontchartrain bridge. *See In re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000) ("To satisfy the first prong of the *Chandris* test, the claimant need only show that he/she does the ship's work." (internal quotation marks omitted)).

However, Boh Brothers disputes the district court's conclusion that Kinchen and Abshire have satisfied the second prong of the *Chandris* test and that they each have a connection to the BIG MAC which is substantial in both nature and duration.

### A.

Boh Brothers argues first that Kinchen is not a seaman and asks us to reverse the district court's grant of summary judgment to the contrary. The question of seaman status is a mixed question of law and fact, but may rightfully be determined on summary judgment where the underlying facts are uncontroverted and "the only rational inference to be drawn from the evidence is that the worker [is] a seaman." *Beard v. Shell Oil Co.*, 606 F.2d 515, 517 (5th Cir. 1979); *see Chandris*, 515 U.S. at 369.

Boh Brothers argues primarily that Kinchen cannot satisfy the second *Chandris* prong because Kinchen is a land-based worker whose job does not regularly expose him to the "perils of the sea." As Boh Brothers correctly points out, the primary purpose of this inquiry is to separate those "sea-based maritime employees . . . from those land-based workers who have only a transitory or sporadic connection to a vessel." *Chandris*, 515 U.S. at 368; s*ee also In re Endeavor Marine Inc.*, 234 F.3d 287.

More importantly, Boh Brothers's argument ignores the Supreme Court's articulation of the relevant inquiry: whether Kinchen's connection to the BIG MAC is "substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 355. The weight of the evidence is that Kinchen, as an ironworker foreman, spent a substantial portion of his time on the BIG MAC, which moved

around the work site transporting and supporting men and materials to construct portions of the bridge. As to the nature of Kinchen's work, all of Kinchen's substantial time aboard the BIG MAC was devoted to the furtherance and supervision of the crane barge's objective, the construction of the Pontchartrain bridge. Kinchen was cross-trained to perform a variety of tasks related to the maintenance and function of the barge. Moreover, the fact that Kinchen returned home daily did not remove him from his exposure to cognizable dangers of the sea.[1] Nor does the classification of Kinchen as a bridge ironworker, a traditionally land-based occupation, serve to negate the seaman status to which Kinchen would otherwise be entitled by virtue of his connection to the BIG MAC. *See Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 89 (1991).[2]

This Court's decision in *In re Endeavor Marine* also supports the conclusion that Kinchen is a seaman. 234 F.3d 287. In that case, we considered whether a derrick barge's crane operator satisfied the *Chandris* test and qualified as a seaman. The injured crane operator worked on a barge in the Mississippi River and was responsible for unloading cargo from other vessels at the port. *Id.* at 289. Like Kinchen, the crane operator in *In re Endeavor Marine* performed a traditionally land-based job which never carried him beyond the immediate vicinity of the port where he was assigned. *See id.* In reaching the conclusion that the crane operator was a seaman, we rejected the district court's reasoning that an employee could not be a seaman if "his duties do not literally

---

[1] *See Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 497 (2005) ("[I]t seems a stretch of the imagination to class the deck hands of a mud dredge in the quiet waters of a Potomac creek with the bold and skillful mariners who breast the angry waves of the Atlantic; but such and so far-reaching are the principles which underlie the jurisdiction of the courts of admiralty that they adapt themselves to all the new kinds of property and new sets of operatives and new conditions which are brought into existence in the progress of the world." (quoting *Saylor v. Taylor*, 77 F. 476, 479 (4th Cir. 1896)).

[2] "It is not the employee's particular job that is determinative, but the employee's connection to a vessel." *Sw. Marine*, 502 U.S. at 89 (quoting *Wilander*, 498 U.S. at 354).

7

carry him to sea." *Id*. at 292. Because the nature of the crane operator's duties revolved around the largely stationary crane barge which remained exposed to maritime perils, we found that the crane operator was a seaman as a matter of law. *Id*.

Kinchen's maritime connection to the BIG MAC is indistinguishable from the crane operator's comparable connection in *In re Endeavor Marine*. Because his connection to the BIG MAC was substantial in both duration and nature, Kinchen qualifies as a seaman.

B.

Boh Brothers also argues that Abshire is not a seaman and that the district court erred in finding to the contrary.[3] As with the question of Kinchen's seaman status, the inquiry here also concerns whether Abshire had a connection to the BIG MAC "that is substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368.

Beginning with the question of the nature of Abshire's connection to the BIG MAC, Boh Brothers has raised the same argument that it did with respect to the nature of Kinchen's connection. Our above reasoning with regard to Kinchen applies equally to Abshire. He therefore has the requisite connection to the BIG MAC that is substantial in nature.

Abshire's seaman status thus turns on whether he has a connection to the BIG MAC that is substantial in *duration*. Although Abshire was injured on his first day of work, the appropriate scope of the duration inquiry is not limited to the day of his injury, but should instead consider the full breadth of the intended scope and duties of his employment. *See id.* at 372; *Becker v. Tidewater, Inc.*, 335 F.3d 376, 389 (5th Cir. 2003). "If a maritime employee receives a new work

---

[3] The district court determined that Abshire had satisfied the nature element on summary judgment, but did not conclude that he had satisfied the duration element until after the bench trial. We accordingly review these issues under the applicable standard of review. *See supra* section II.

assignment . . . , he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Chandris*, 515 U.S. at 372. Abshire was engaged as a full time employee on the Pontchartrain bridge project with the expectation that his employment was permanent or to extend indefinitely until the job was completed.

Where the worker divides his time between vessel and land, an employee can only establish the requisite connection to a vessel—and thus qualify as a seaman—if he spends a substantial portion of his time in service of the vessel. *See id.* at 371. This circuit has quantified the minimum duration of time necessary to qualify as "substantial" for the purpose of classifying an employee as a seaman: "[A]s a general rule, [a worker] must show [substantial duration] by demonstrating that 30 percent or more of his time is spent in service of that vessel." *Becker*, 335 F.3d at 388–89 (quoting *Roberts v. Cardinal Servs. Inc.*, 266 F.3d 368, 375 (5th Cir. 2001)).

Abshire's duties and the portion of his time he would have spent in service of the BIG MAC on this job were the subject of intense factual dispute at the bench trial. A Boh Brothers project supervisor testified that Abshire would have spent no more than about 20% of his time aboard the BIG MAC. However, two other ironworkers with similar duties to Abshire testified that 30-40% of his time would be spent aboard the barge. Additionally, Kinchen, who was Abshire's immediate supervisor, testified that Abshire would have spent 60% of his time on the BIG MAC. In light of this evidence, we find no clear error in the trial court's decision to credit the testimony of Abshire's foreman and fellow employees. We therefore decline to disturb the trial court's factual finding that Abshire would have spent at least 30% of his time aboard the BIG MAC and thus satisfied the duration component of the *Chandris* seaman test.[4]

---

[4] Citing Federal Rule of Evidence 602, Boh Brothers argues that the district court erred by crediting testimony from other journeymen ironworkers and foremen although such

The record therefore fully supports the district court's finding that Abshire had a connection to the vessel which was substantial in duration and nature, and therefore was a seaman.

C.

Boh Brothers also challenges the $1,325,000 general damages award to Abshire. Because a damage award is a finding of fact, we review such awards for clear error. *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 121 (5th Cir. 1994).

When the crewboat allided with the survey tower, Abshire's entire body was thrown forward, causing his left side to strike the wall of the boat's cabin. It is undisputed that Abshire had substantial injuries resulting from the allision, including left sacral fractures, left pelvis fractures, multiple spinal fractures, a partially collapsed lung, and crushed testicles. Besides his immediate traumatic injuries, Abshire underwent multiple surgeries, suffered a severe staph infection, panic attacks and anxiety, and sustained reflex sympathetic dystrophy (complex regional pain syndrome), a condition of the nerves following an injury resulting in disproportionate discomfort and pain. On the date of the accident, Abshire was 29 years old. Trial testimony established that Abshire is permanently disabled, will continue to degenerate, and will likely require follow-up surgeries and treatment for the rest of his life.[5]

---

workers had no supervisory authority over Abshire. However, Boh Brothers misreads Rule 602, which requires only that a witness "ha[ve] personal knowledge of the matter." Because Rule 602 requires only personal knowledge and not supervisory authority, the testimony of the other journeymen ironworkers and foremen is certainly admissible.

[5] Unchallenged is the district court's award of $1,346,824 for Abshire's future medical expenses, as well an award of $2,128,614 for his lost wages and fringe benefits.

In light of the evidence establishing the severe and permanent nature of Abshire's injuries, we cannot say that a general damages award of $1,325,000 constitutes clear error.[6]

## D.

Next, Abshire and Kinchen challenge the district court's factual finding that the Joint Venture's erection and maintenance of the survey tower was not a cause of the accident. The analysis of a maritime tort is guided by general principles of negligence law, and includes the requirement that the plaintiff demonstrate a "causal connection between the defendant's conduct and the plaintiff's injury." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010).

Abshire and Kinchen argue that the record requires a finding that the Joint Venture's negligent maintenance of the survey tower involved in the allision was a cause of the accident. Specifically, they contend that the survey piling's lack of discrete markings and color made it difficult to see under variable daylight conditions. Furthermore, they contend that the Joint Venture failed to obtain the proper regulatory permit required for such structures in navigable waters.

However, the record amply supports the district court's finding that the survey tower's coloration and regulatory certification had nothing to do with the allision. According to the trial testimony, the accident occurred on a clear day

---

[6] *See, e.g., Thornton v. Diamond Offshore Management Co.,* 326 Fed. App'x 318 (5th Cir 2009) (unpublished) (upholding $2,500,000 general damages award for a plaintiff whose hand and arm were crushed, requiring multiple surgeries and resulting in permanent disability). Even the cases cited by Boh Brothers suggest that Abshire's award is appropriate given the admittedly severe nature of his injuries and his substantial expected medical expenses. *See, e.g.*, *McGee v. Rowan Companies Inc.*, 2009 WL 3150309 (E.D. La. Sept. 24, 2009) (unpublished) (awarding $900,000 in general damages to Jones Act plaintiff who suffered crushed knee, extensive pain, and disability); *McCuller v. Nautical Ventures, LLC*, 2009 WL 3254290 (E.D. La. Oct. 6, 2009) (unpublished), *vacated in part on other grounds*, 434 Fed. App'x 408 (5th Cir. 2011) (awarding $800,000 in general damages to maritime plaintiff who suffered injured back, pain, and disability).

and the survey tower was clearly visible from approximately a mile away. Furthermore, Kinchen, who was operating the boat at the time of the accident, testified that he had piloted the crewboat between the worksite and shore daily for at least two months and that he was aware of the existence of the survey towers and their approximate location. When asked at trial why he hit the survey tower, Kinchen testified that the *only* reason he hit the tower was because of the tires on the front of the boat.[7]

The record therefore fully supports the district court's finding that the survey tower was not a cause of the allision.

### E.

The parties have also challenged the district court's factual finding relating to allocation of fault and the district court's discretionary call relating to its refusal to re-open evidence after the conclusion of the trial. However, after a careful review of the record, we are unable to conclude that the district court committed clear error or abused its discretion in either of these rulings.

### IV.

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

[7] The following exchange took place upon Kinchen's cross-examination by Boh Brothers counsel:

> *Counsel*: Can you tell me why you hit that GPS tower on July the 3rd, 2008?
> *Kinchen*: Because I didn't see it.
> *Counsel*: Why didn't you see it?
> *Kinchen*: Because they had tires on the front of the boat.
> *Counsel*: Is there any other reason why you hit that tower, other than the tires were on the front of the push knees?
> *Kinchen*: No, sir.

12