Curtis **CAMPO**, Plaintiff–Appellant,

v.

**ELECTRO–COAL TRANSFER CORPORATION**, Defendant–Appellee.

No. 89–3738
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 23, 1990.

Evangeline M. Vavrick, New Orleans, La., for plaintiff-appellant.

George R. Alvey, Jr., Edith B. Clement, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant-appellee.

Lance S. Ostendorf, David L. Barnett, New Orleans, La., for Intervenor–Nat'l. Union.

Before WILLIAMS, SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

In this maritime personal injury suit Curtis Campo appeals the district court's grant of directed verdict on the issue of Jones Act seaman status. Finding that Campo is foreclosed from seeking Jones Act seaman status because he is covered under the Longshore and Harbor Workers' Compensation Act (the LHWCA), we affirm.

On motions for directed verdict we consider all of the evidence, not just that which supports Campo's case, in the light and with all reasonable inferences most favorable to Campo. If the facts and inferences point so strongly and overwhelmingly in favor of Electro–Coal that reasonable men could not arrive at a contrary conclusion, the directed verdict was proper. However, if there is substantial evidence opposed to the motion, the motion for directed verdict should have been denied and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury; there must be a conflict in substantial evidence to create a jury question. *Boeing Company v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969).

Campo was employed by Electro–Coal Transfer at its cargo transfer terminal on the Mississippi River. Electro–Coal employees are divided into two categories, the operations division and the harbor boat division. Employees of the harbor boat division are specifically assigned to one of Electro–Coal's four harbor tugs. The operations department personnel board tugs, barges, and special purpose vessels to position barges and to assist the harbor tugs in opening and closing barge roll-top covers used to protect cargo in the barges. Generally, operations department employees are shoreside dock workers whose main function is to facilitate the loading and unloading of cargo.

Campo worked in the operations division as an operator/trainee and spent most of his time operating a continuous bucket unloader, a machine located on the dock and designed to remove cargo from barges. Campo's position required that he conduct general housekeeping duties aboard the barges. Specifically, he had to tie and untie barges during the loading and unloading process, to open and close barge cargo covers, to keep the barges clean, to ensure that the barges did not take on water, to pump ballast, and to maintain the hydraulic winches to which the river barges to be loaded and unloaded are attached. In a 12 hour shift Campo worked with as many as 20 barges and spent as much as 40 percent of the time tying and untying barges.

**12**

Campo also assisted harbor tugs in making and breaking tows, spotting river barges, and opening roll top covers of barges. In his eight years of employment with Electro–Coal, Campo substituted as a deckhand on a harbor vessel only twice. Beyond this, any activity performed by Campo while on any vessel was for the sole purpose of facilitating cargo operations.

Campo was injured when he fell into a barge which was moored at the dock and being prepared to take on cargo. A tug was positioned on one side of the barge, and a line stretched between Campo and the tug was attached to the cover to roll it open. When the cover was opened Campo detached the line and gave it back to the tug's deckhand. As the tug moved away from the barge upon which Campo was standing, it either jostled the barge or Campo misstepped, causing Campo to fall into the barge's cargo hold.

In *Pizzitolo v. Electro–Coal Transfer Corp.*, 812 F.2d 977, 982 (5th Cir.1987), *cert. denied*, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988), we held that coverage under the LHWCA precluded a finding of Jones Act seaman status. *Williams v. Weber Management Services, Inc.*, 839 F.2d 1039, 1040 (5th Cir.1987). Section 902(3) of the LHWCA defines an "employee" covered under the Act as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker...." Campo's employment duties involved the loading and unloading of cargo, traditional long-shoring activities. *Durr v. Global Marine, Inc.*, 673 F.2d 740, 741 (5th Cir. 1982). Because Campo was engaged in an occupation expressly enumerated in the LHWCA, the district court properly granted a directed verdict in favor of the defendant.

We find Campo's remaining arguments unavailing. Campo first contends that the district court abused its discretion by holding the pre-trial conference on the Friday before jury selection began on Monday. However, Campo fails to point to any prejudice resulting from the timing of the pre-trial conference; in addition, if Campo were surprised by what transpired at the conference, his remedy was to have moved for a continuance. Having failed to do so, Campo waived the right to assert this alleged error on appeal.

Campo also contends that the district court abused its discretion in condemning him to pay Electro–Coal's costs for duplicate copies of depositions of its employees taken by Campo. The law is clear that the court's order was proper because the copies were necessarily obtained for use in the case. *See West Wind Africa Line, Ltd. v. Corpus Christi Marine Services Co.*, 834 F.2d 1232, 1237–38 (5th Cir. 1988). Campo's two final points, that the court erred in excluding certain evidence and in limiting the consideration of Campo's employment duties to the two years directly preceding the accident, are rendered moot because the court considered all of the evidence before him in granting the directed verdict.

For the foregoing reasons, the judgement of the district court is in all respects

AFFIRMED.