United States Court of Appeals,

Fifth Circuit.

No. 89–3738.

Curtis CAMPO, Plaintiff–Appellant,

v.

ELECTRO–COAL TRANSFER CORP., Defendant–Appellee.

Aug. 28, 1992.

On Remand from the Supreme Court of the United States.

Before POLITZ, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This court previously affirmed the district court's entry of a directed verdict against plaintiff Curtis Campo.[1]  Our earlier opinion relied upon *Pizzitolo v. Electro–Coal Transfer Corp.,* 812 F.2d 977, 983 (5th Cir.1987), *cert. denied,* 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988), the reasoning of which was rejected in *Southwest Marine v. Gizoni,* —— U.S. ——, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991).  The Supreme Court vacated our opinion in *Campo I,* directing us to reconsider in light of *Southwest Marine.*  We do so now and affirm on grounds different from those in our prior opinion.


I.

Campo was employed by Electro–Coal Transfer Corp. (Electro–Coal) at its cargo transfer terminal on the Mississippi River.  He was injured while unrolling a barge cargo cover[2] and brought suit against Electro–Coal under the Jones Act, 46 U.S.C.App. § 688.

After hearing Campo's evidence of his seaman status, the district court directed a verdict in

---

[1]*Campo v. Electro–Coal Transfer Corp.,* 955 F.2d 10 (5th Cir.1990) (hereinafter *Campo I* ), *vacated and remanded,* —— U.S. ——, 112 S.Ct. 858, 116 L.Ed.2d 766 (1992).

[2]A detailed description of the facts of this case may be found in *Campo I,* 955 F.2d at 11–12.

favor of Electro–Coal. The court first held that no reasonable jury could find that Campo was a seaman, as he could not show a permanent assignment to or substantial work on a fleet of vessels. Relying upon *Pizzitolo,* the court also found that Campo was not a seaman as a matter of law because his job was specifically enumerated in the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 902(3). We affirmed on the basis of the court's second line of reasoning, finding that *Pizzitolo* controlled the outcome. *See Campo I,* 955 F.2d at 12.

## II.

*Southwest Marine* overruled *Pizzitolo. Easley v. Southern Shipbuilding Corp.,* 965 F.2d 1, 3 (5th Cir.1992). We therefore must examine that portion of the district court's ruling that did not rely upon *Pizzitolo.* On motions for directed verdict, we consider all of the evidence, not just that which supports the nonmovant's case, in the light and with all reasonable inferences most favorable to the non-movant. *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

In order to bring a claim under the Jones Act, Campo must show that (1) he was permanently assigned to a vessel or fleet or performed a substantial part of his work on the vessel or fleet and (2) that his work contributed to the mission of the vessel or fleet. *See Barrett v. Chevron, U.S.A.,* 781 F.2d 1067, 1074 (5th Cir.1986) (en banc); *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959).

Whether the plaintiff relies upon establishing a permanent assignment or substantial work performance, he must show a connection to a vessel or fleet of vessels in order to satisfy the first prong of the *Robison/Barrett* test. *See Buras v. Commercial Testing & Eng'g Co.,* 736 F.2d 307, 310–311 (5th Cir.1984); *Guidry v. Continental Oil Co.,* 640 F.2d 523, 529 (5th Cir.1981) ("[t]he key is that there must be a relationship between the claimant and ... [an] identifiable group of vessels"), *cert. denied,* 454 U.S. 818, 102 S.Ct. 96, 70 L.Ed.2d 87 (1981). A fleet is "an identifiable group of vessels acting together or under one control. We reject the notion that fleet of vessels in

this context means any group of vessels an employee happens to work aboard." *Barrett,* 781 F.2d at 1074.

Campo has failed to identify a group of vessels to which he was permanently assigned or on which he performed a substantial amount of work. Campo describes a six- or seven-thousand-vessel fleet composed of the small number of Electro–Coal vessels, river barges owned by Mid–South Towing, and ocean barges owned by Gulf Coast Transit.

This grouping fails as a fleet for two reasons. First, Campo did not establish common control of these three groups of vessels.[3] Second, Campo was randomly assigned to vessels that entered the terminal, without regard to ownership, and not all of the vessels were owned or controlled by these three companies.[4] It is well established that a large number of variously owned and controlled vessels does not constitute a fleet. *See, e.g., Langston v. Schlumberger Offshore Servs.,* 809 F.2d 1192, 1194 (5th Cir.1987); *Barrett,* 736 F.2d at 1194; *Guidry,* 640 F.2d at 529.

Since Campo has not shown a relationship to a fleet of vessels, he does not qualify as a Jones Act seaman. The court properly granted a directed verdict in favor of Electro–Coal.

III.

Campo also has raised several evidentiary and procedural points of error. We reject these arguments for the reasons set out in the prior opinion. *See Campo I,* 955 F.2d at 12. The intervention of National Union Fire Insurance is dismissed as moot.

---

[3]Counsel for Campo attempted to introduce a promotional film produced by Tampa Electric Company. Counsel never explained to the court that the purpose of this evidence was to prove common control of the vessels owned by Electro–Coal, Mid–South, and Gulf Coast. Nor would the promotional video, without more, have served to establish such common control.

[4]Campo seems to suggest that Electro–Coal controlled all the ships that used its terminal in that it directed the cargo operations. But "control" encompasses more than a temporary authority to perform an isolated task on a vessel.

AFFIRMED.